# WHEELING.

SWANN, ADM'R, v. SUMMERS et al.

Submitted January 14, 1881.   Decided December 10, 1881.

*(PATTON, JUDGE, Absent.)

1. Under the 10th and 11th sections of chapter 141 of Code of West Virginia pp. 673–674 providing for a suggestion by a judgment-creditor, that by reason of the lien of a writ of fieri facias there is a liability on any person other than the judgment-debtor and a summons thereon to such third person to answer the suggestion a judgment can be rendered against such third person, only when he owes a debt to the defendant in the execution or has in his hands personal estate of the defendant in the execution, for which debt or estate an action at law could have been brought against him. And if his liability is purely equitable and could be enforced only in a court of equity, no judgment can be rendered against him in such proceeding as a garnishee.

2. A remedy to enforce such purely equitable liability is provided in the 15th section of said chapter and is by a suit in equity in the name of the sheriff or such other officer, as the court may designate.

3. If by any legislation one corporation takes charge of a portion of the property and franchise of another and conducts its business in part, and by such legislation and action it is responsible to render an account in a court of equity for its actings and doings to the first corporation or its creditors, the creditor of the first corporation, who has issued a fieri facias against the property of the first corporation, can not obtain by the garnishee-process a judgment against the second corporation or any of its debtors.

---

*Case submitted before Judge P. took his seat on the bench.

4. A judgment-creditor of the James River and Kanawha company, who has sued out a *fieri facias*, can not by a garnishee-process obtain a judgment against the Kanawha Board or any of its debtors.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Kanawha, rendered on the 13th day of June, 1879, in an action in said court then pending, wherein Thomas B. Swann, administrator of the estate of Stewart Eagle, deceased, was plaintiff, and Lewis Summers and others, debtors of the James River and Kanawha Company, were defendants, allowed upon the petition of the said Summers.

Hon. Joseph Smith, Judge of the seventh judicial circuit, rendered the judgment complained of.

Green, Judge, furnishes the following statement of the case.

At the February term, 1857, of the county court of Kanawha county Stewart Eagle recovered against the James River and Kanawha Company a judgment for the sum of $5,400.00 with interest from February 23, 1857, till paid and costs $40.00, on which judgment writs of *fieri facias* issued on March 7, 1857, on August 21, 1857, and on November 9, 1857, all of which were returned "No property found." This judgment was revived in the name of Thomas B. Swann, administrator of Stewart Eagle, in the circuit court of Kanawha county at the October term, 1870, by *scire facias*; an execution was awarded for the balance then due, $3,967.18 with interest thereon from November 8, 1870, and costs $31.23; and writs of *fieri facias* issued thereon on November 15, 1870, August 5, 1875, and February 15, 1879, all of which were returned "No property found." On February 3, 1879, a suggestion was made, that by reason of the lien of this last execution there was a liability upon Lewis Summers, the Kanawha Board and the Kanawha Valley Bank; and on the same day a summons issued against these parties to answer this suggestion at the next term of the circuit court of Kanawha county. On April 17, 1879, a like suggestion was made and summons issued against C. C. Lewis.

The Kanawha Board answered and set forth a history of the legislation of Virginia and West Virginia with reference to the James River and Kanawha Company and the Kanawha

Board, and stated, that under the act of December 2, 1863, it issued certain bonds, which fell due January 1, 1874, and gave a deed of trust on their property &c., to secure the same ; that it used the proceeds of these bonds in payment for dredges and other boats, machinery &c. ; and that under the act of March 2, 1869, (see Acts of 1869, page 75) it issued bonds to the amount of $15,500.00 falling due January 1, 1881, the proceeds of which were to pay off said bonds before named and a floating debt ; that they were also secured by a deed of trust on all its property ; of this $3,500.00 had been paid and $1,200.00 was still unpaid ; to pay this it had provided a sinking fund, of which Lewis Summers was a borrower of $3,500.00 not yet due, and the Kanawha Valley Bank was also a borrower of $1,399.97, a part of this sinking fund ; that this money was all earned by its operations in hiring out the use of its dredges to the United States Government, which was improving the navigation of the Kanawha River, and from tolls on this river, which it had collected. A copy of the last deed of trust is filed with the answer. This deed was dated January 5, 1871, and was recorded February 22, 1871. It conveys to trustees all its interest legal or equitable in the Great Kanawha river, the improvements thereof, the revenues and tolls arising therefrom and all the interests now in its possession or under its control and all the property it hereafter acquires, and all the incomes, rights, franchises and privileges in which it is or may be entitled when the holders of the bonds and interest-warrants secured may claim the benefit of the trust, upon trust to permit it to collect the revenues and tolls of the river and use and control the movable property until there be default in the payment of the interest or principal of the bonds secured. The bonds secured were to be issued to the amount of $100,000.00, payable January 1, 1881, and to bear interest at the rate of ten per cent. per annum payable semi-annually.

The Kanawha Board in this answer denies, as do also all the other garnishees, that they or any of them was at the date of said last named execution or since in any way indebted to the defendant in said execution, the James River and Kanawha Company, or had in their possession then or since in the possession or under the control of any of them any property,

effects, rights or credits belonging to the James River and Kanawha Company, or that there is any such lien as suggested by the said plaintiff. The Kanawha Valley Bank and Lewis Summers adopt this answer and admit their indebtedness to the Kanawha Board as stated but deny any indebtedness to the James River and Kanawha Company. C. C. Lewis the other garnishee also denies all indebtedness to the James River and Kanawha Company but admits, that as treasurer of the Kanawha Board he has in his hands $2,960.05, of which $868.49 came into his hands after March 3, 1879. These answers were all sworn to.

On May 24, 1879, the following order was made:

"And at another day, to wit: At a circuit court held for Kanawha county, at the court-house thereof, on the 24th day of May, 1879, this day the suggestee, C. C. Lewis treasurer of the Kanawha Board, filed his answer to the suggestion against him in this cause; and the plaintiff also filed as evidence the report of the Kanawha Board, a statement in writing made by J. D. Baines, secretary of the Kanawha Board, and copies of a judgment in favor of S. Eagle against James River and Kanawha Company, and of S. Eagle's administrator vs. same, with copies of executions issued on last judgment. And defendants, the Kanawha Board and the other suggestees, filed two deeds, one of the Kanawha Board to whom it may concern, and the other of the James River and Kanawha Company to the Commonwealth of Virginia."

The statement of J. D. Baines, secretary of the Kanawha Board, referred to showed in detail the receipts and disbursements of the Kanawha Board from March 28, 1871, to May 1, 1879. The receipts being $110,376.10, and the disbursements $107,188.22, present balance May 1, 1879, $2,877.91. The two deeds referred to were a deed of trust dated and duly recorded July 17, 1871, simply reducing the number of bonds to be issued and secured under the deed of January 5, 1871, referred to and filed in the answer of the Kanawha Board, the amount of bonds issued and to be issued secured by said deed being reduced to $50,000.00, and a mortgage recorded in Henrico county, Virginia, May 30, 1860, and in Kanawha county June 15, 1860, which mortgage was dated May 25, 1860, and was executed by the James River and Ka-

nawha Company to the Board of Public Works of Virginia. This deed on its face states, that it was made under the act of the Legislature of Virginia dated March 23, 1860, and that it conveyed to the Commonwealth of Virginia the works, property and net revenue of the Kanawha line of improvement from the mouth thereof to the Loup creek shoals, provided, nevertheless, if the said Kanawha Board of directors of said company shall well and truly pay into the treasury of the Commonwealth three and one half per centum on the 15th of June and December of each year on such amount of registered stock as may be issued under said act, till the whole amount of same principal and interest is paid, then the deed was to be void, or otherwise to remain in full force.

On the 26th of May, 1876, the circuit court of Kanawha county in this case made the following order :

" By consent of parties it is agreed, that all the parties, who have been suggested in this cause, shall have the right to give in evidence any matter, which they could have given in evidence if the statute of limitations had been pleaded by them ; and they, and each of them, may rely on said statute of limitations in the same manner as if the same had been pleaded in this cause by them ; and that the administrator of Stewart Eagle may give in evidence any matter *they* could have given in evidence on a special replication to the plea of said statute, and may rely on any matter given in evidence in the same manner as if a special replication had been filed ; and the said defendants filed the affidavits of J. D. Baines and Thomas L. Broun, which it is agreed by the respective parties, by their attorneys, shall be read in evidence and have the same force and effect as if the said affiants were examined on oath, and the facts therein stated were testified to by them on the trial of the cause."

The affidavit of J. D. Baines referred to states, that the Kanawha Board has been in the unmolested control of the Kanawha River ever since April 5, 1871, and during all that period has collected toll and expended money on said river making its reports to the board of public works of the State of West Virginia and being under their control, and during all that time the James River and Kanawha Company has exercised no control over said river, its tolls or franchises. T. L.

Broun's affidavit referred to states, that the James River and Kanawha Company did not prior to March 3, 1869, complete their canal to the town of Covington in the State of Virginia, nor to the western terminus of the Virginia Central Railroad at any time prior to March 3, 1869.

On June 13, 1879, the following order was made:

"The plaintiff read in evidence in this case the judgments of the said S. Eagle *v.* The James River and Kanawha Company, and also the judgment of S. Eagle's adm'r *v.* same, together with the several executions issued on said judgments, and the returns made to same, filed among the papers of the cause. It is agreed, that all the acts of Legislature of Virginia and West Virginia upon the subject of the James River and Kanawha Company and of the Canal Company and of the Kanawha Board, may be read in any Appellate Court as if inserted and made part of this record, and that said acts were read and used in evidence upon the hearing of this cause."

At the same time the following final judgment was rendered in the cause:

"This day came the said Stuart Eagle, by his attorneys, as well as the parties who had been suggested, by their attorneys, and thereupon the court, after mature consideration of the separate answers in writing of the parties suggested heretofore filed, as well as the evidence adduced by the said Eagle's administrator, and the evidence adduced by the said suggested parties, and arguments of counsel, is of opinion, that the said Stuart Eagle is not entitled to recover, and that he has no lien upon the moneys admitted to be in the hands of the said Kanawha Board, the said Lewis Summers, the said Kanawha Valley Bank or the said C. C. Lewis, or any part thereof. It is therefore considered by the court, that the suggestion aforesaid be and the same is hereby dismissed, and that the parties suggested recover from said administrator, to be levied of the goods of his intestate, their costs by them expended in this proceeding, including ten dollars attorney's fee. And the said administrator having intimated his intention to apply to the Supreme Court of Appeals for a *supersedeas* to this judgment, it is ordered, that the execution and effect of said judgment be suspended for the space of sixty days from this time, whenever and as soon as the said administrator, or some one

for him, shall give bond, with good security, before the clerk of this Court, conditioned to pay all costs and damages which any person may sustain by reason of such suspension, in case the said *supersedeas* shall not be awarded and perfected."

From this judgment a writ of error and *supersedeas* was awarded on the petition of Thomas B. Swann, adm'r of Stuart Eagle, deceased.

*William A. Quarrier,* for plaintiffs in error.

1. If the plaintiffs in error have any remedy in this case, it is not by suggestion, but by bill in equity.

2. The *fieri facias* lien only binds the property and estate of or to which the judgment-debtor is entitled. None of the parties suggested owe anything to or have any property or effects belonging to the judgment-debtor; Acts 1872–3, p. 634, section 2; 18 Howard, 304.

3. Even if the plaintiffs in error had a lien, the lien could only be enforced on the original property that was forfeited, not upon the subsequent earnings of the new corporation, the Kanawha Board.

4. Even if there was a lien upon these subsequent earnings, it could only be upon *net* earnings. Here there are no net earnings.

5. The moneys suggested cannot be reached, because there is a prior deed of trust upon them in favor of the bondholders.

6. The trust-deed to the bondholders is valid and binding.

7. The plaintiff in error is barred by the statute of limitations.

8. The Legislative act, by which West Virginia took possession of the Kanawha river is legal, constitutional and effective. 5 Otto 49; 5 Wall. 211; 21 Wall. 44.

9. The Kanawha Board is a bureau of the State government; it cannot be sued, its revenues cannot be suggested. Const. W. Va. article VI section 35; 10 Leigh 454; 6 Gratt. 150.

10. West Virginia acquired the Kanawha river by purchase and contract, and not by forfeiture. The State therefore takes the river free from the equities or claims of any of the creditors of the James River and Kanawha Company's creditors. Act of W. Va. 3d March, 1869; Acts of Virginia 1860, p. 113.

*John C. Swann* for plaintiff in error, cited the following authorities:   1 Ohio Dig. 570; 12 Gratt. 401; Code 561–566; 18 Gratt. 216; 6 Otto 35; 11 Wall. 217; 3 M. & Selw. 562; 3 Otto 642; *Rick* v. *Hamilton*, Rep. 1880 Sept. 15; Code 558, 559, §§ 14, 20, 24; *Id.* 673, 674; Acts of Va. 1860 p. 118 § 13; Acts of Va. 1869 p. 75; Cool. Cont. Lim. 141; Abb. Dig. Corp. P. 299 §§ 91–93; 22 Pick. 334; Ang. & Ames Corp. § 77; 15 How. 304; 8 Pet. 281; 18 How. 408; 4 Wall. 533; Ang. & Ames Corp. §779 a.; Abb. Dig. Corp. 817, 818; 18 Ves. 429; 5 Paige 583; 11 Paige 136; Rep. April 1879, p. 436; 6 Gratt. 170; 13 Gratt. 555; 7 Wall. 154; 3 Gratt. 373; 4 Rand. 282; 6 Gratt. 444; 11 Gratt. 782; 3 Rand. 410; Code p. 674 § 11; 5 Otto 714; 11 Gratt. 610; 2 W. Va. 449; 14 Gratt. 568; 15 Gratt. 57; 12 Gratt. 664; 17 Gratt. 289; 18 How. 480; 6 Johns. Chy. 360; 3 Abb. Dig. Corp. 291, §§ 19–23; *Id.* p. 29, § 28; *Id.* p. 339, § 6; *Id.* p. 341 § 25; *Id.* p. 342 § 29; Ang. & Ames Corp. §§ 667, 752, 746, 747; Const. W. Va. Art. 1 § 4; *Id.* Art. II § 6; 17 Wis. 499; 15 Abb. (N. Y.) Pr. 560; 35 Abb. (N. Y.) Pr. 369; 15 Ind. 197; 22 Ind. 157; 25 Ind. 336; 29 Ind. 72; 3 Metc. (Ky.) 171; 9 Minn. 270; 10 How. (N. Y.) Pr. 136; 2 Leigh 576; 12 Gratt. 401; 1 Paige Chy. 637; Va. L. Jour. 1880 p. 307; 21 Me. 257; 25 Ill. 30; 24 Ill. 127.

*T. B. Swann* for plaintiff in error cited the following authorities: Acts 1869 ch. 114 § 11; *Id.* ch. 115; Acts 1866 ch. 47 § 6; 13 Ves. 428; Abb. Dig. Corp. 338 § 1; 46 Barb. 361; 3 Sandf. Chy. 625; 2 Duv. 366; 5 B. & Ad. 765; 4 B. C. Cooley 380; 9 Cr. 43; 2 Otto 46; 9 Ohio 289; 8 Pet. 285; 18 How. 486; Code 21 § 2; 4 Wheat. 518; 10 Otto 514; 15 Ohio 150; *Id.* 322; 1 Gat. C. C. 41; *Id.* 192; *Id.* 268; 8 Pet. 281; 6 Wall. 532; 9 Wall. 687; Acts 1869 ch. 114 § 11; 10 Wend. 268; Code ch. 100 § 14; *Id.* ch. 107 § 11; 15 Gratt. 57; 14 Gratt. 568; 11 Gratt. 664; 10 Ohio Dig. 570 § 16; 5 Otto 714; 8 Pet. 281; Hill on Trust. §§ 270, 271; *Id.* § 430; *Id.* § 47; *Id.* § 50; 6 J. C. R. 360; 2 B. & Ald. 258; Coke Lit. 2 (C); Code pp. 456, 457; 3 Leigh 492; 10 Otto 514.

*C. Hedrick*, for defendants in error cited the following authorities:   10 Gratt. 400; *Id.* 405–409; Abb. Dig. Law of

Corp. 338 § 3 ; 29 Ala. N. S. 573 ; 3 Otto 49 ; 5 Lev. 237 ; 3 Durn. & E. 241 ; 3 Burr. 1866 ; 8 Smed. & M. 791 ; Id. 9 ; 13 Ohio 269 ; Id. 298 ; 5 Humph. 38 ; 8 Ga. 486 ; 19 Ga. 337; Id. 289; Angell & Ames §§ 778 a, 779; 10 Leigh 454 ; 6 Gratt. 160; 13 Gratt. 553; 31 Wis. 120; 2 Otto 528 ; 3 Gratt. 373; Id. 444 ; 3 Rand. 440.

GREEN, JUDGE, announced the opinion of the Court:

The questions of law really involved in this case are, first: Upon what property is a *writ of fieri facias*, which has been issued under chapter 218 § 2 p. 634 of Acts of 1872–3, a lien? and secondly : What is the proper mode of enforcing such lien, when there is no actual levy of the *fieri facias*, and when by reason of the lien there is a liability on any person other than the judgment-debtor under the provisions of sections 10, 11, 12, 13 and 15 of chapter 218 p. 638 and 639 of Acts of 1872–3 ? The second section declares, that it shall be a lien on " all the personal estate of or to which the judgment-debtor is possessed or entitled (although not levied on or capable of being levied on under chapter 140 of the Code,") with certain exceptions and qualifications specified in the latter part of said section. With these exceptions it is a lien on all the personal estate of the debtor, whether it be in his possession or not. It therefore includes choses in action, whether they are capable of being enforced in a common law court or only in a court of equity. This is rendered still more apparent by the 15th section of chapter 218 of Acts of 1872–3 p. 639, which provides for the enforcement of this lien by suit either at law or in equity.

The next enquiry is: What is the proper mode of enforcing this lien? This must, we think, obviously depend on the character of the personal estate, upon which the lien is proposed to be enforced. Section 10 of chapter 218 of Acts of 1872–3 pp. 637-638 provides: "On a suggestion by a judgment-creditor, that by reason of the lien of his writ of *fieri facias* there is a liability on any person other than the judgment-debtor, a summons may be sued out of the office of the clerk of the court of the county in which such person resides against such person to answer such suggestion. The return-day of which summons may be the next term of said court." This section

by a blunder omitted to provide for such proceedings in any but the county court; but the act of 1875 chapter 19 p. 26 provides for the same proceedings in the circuit court also, amending the act of 1872–3 by inserting before county court the words "circuit or." It was under this law, that the plaintiff in error proceeded in this case to enforce his lien. The 11th, 12th and 13th sections provide, how the court shall proceed after this summons to ascertain, whether there be any such liability on the garnishee, as has been suggested; and having ascertained it "the court may order him to pay any debts or deliver any estate, for which there is real liability, or to pay the value of such estate to any officer, whom it may designate. See section 11 of chapter 218 of Acts of 1872–3, p. 638.

Sections 11, 12 and 13 of this chapter show, that no order can be made by the court against the garnishee, except where he owes a debt to the defendant in the execution, or has estate of such defendant in his hands. Now it is obvious, that the lien of the *fieri facias* under the second section of this act, which covers "all the personal estate of the defendant in the execution, which he is possessed of or entitled to," extends to many cases, where the garnishee could with no propriety be said either to owe a debt to the defendant in the execution or to have any of his estate in his hands. As for example, if the garnishee by a written contract not under seal has bought such estate of the defendant in the execution, he does not owe a debt to him, nor has the garnishee any estate of his in his hands. But the defendant in the execution has a right to bring a suit in a court of equity for the specific execution of the contract, and on making him a good deed for the land, if he can do so, has a right to enforce of the garnishee the payment of the purchase-money. This right of suit in equity is a chose in action included in the broad term, personal estate, and the lien of the plaintiff in the execution under this 2d section extends to and covers it. But it is obvious, that no judgment can under the garnishee-process be rendered against him for this purchase-money. It is neither a debt due the defendant in the execution, nor is any estate of his in the hands of the garnishee. It is simply a liability, which may be enforced in a court of equity, provided the plaintiff can

do and does do certain things. So too if the garnishee be an executor of a will, in which a legacy is bequeathed to the defendant in the execution, he does not owe him a debt, nor has he any of his estate in his hands; and therefore the payment of such legacy cannot be enforced by the plaintiff in the execution by garnishee-process. Yet his *fieri facias* clearly gives him a lien on this legacy. How then in these and in many other instances, which might be put, is this lien of the *fi. fa.* to be enforced, when the garnishee neither owes a debt, nor has estate of the defendant in the execution in his hands?

The 15th section of chapter 218 of Acts of 1872–3, page 639, provides an efficient mode perfectly suited to all such cases. It is as follows: "For the recovery of any personal estate, on which a writ of *fieri facias* is a lien, or the enforcement of any liability in respect to any such estate a suit may be maintained at or in equity in the name of the officer, to whom such writ was delivered. And any person interested may bring such suit at his own costs in the officer's name." The obvious remedy given by this section in such cases is for the plaintiff in the execution to bring the necessary suit in equity in the name of the sheriff to enforce the liability. Where the garnishee owes a debt to the defendant in an execution or has estate of his in his hands, the character of his liability is such, that it might be enforced in a common law suit by an action of debt, detinue or some other appropriate personal action; and when this is the character of his liability, it can be appropriately enforced by the garnishee-process; and in all such cases this process may be used for that purpose by the plaintiff in the execution. But when the liability of the garnishee is such, that it can *only* be enforced in a court of equity. The garnishee-process is obviously entirely unsuited to enforce it; and in such case the plaintiff in the execution is authorized in the name of the sheriff to bring a suit in equity, where alone such a case can be disposed of, to enforce the liability for his own benefit. If the liability of the garnishee was of such a character, that it could have been enforced at law or in equity, then the plaintiff could, if he chose, enforce it by the garnishee-process or by a suit in equity in the name of the sheriff.

If we assume, that the garnishees in this case or any of

them were liable to the defendant in the execution, The James River and Kanawha Company, and that the plaintiff in the execution had a lien by reason of his *fieri facias* on this liability, was the character of the liability such, that it could be enforced by a garnishee-process, as was attempted in this case, or could it be enforced only by a suit in equity ? To determine this, it is necessary to examine the legislation in the State of Virginia and in this State, out of which this liability, if any exists, arose.

The James River and Kanawha Company was chartered March 15, 1832, as a joint-stock company for the purpose of connecting the tide-water of James River with the navigable waters of the Ohio. See supplement of Revised Code ch. 377 p. 474. The State of Virginia owned a considerable portion of the stock of this corporation. By an act passed February 15, 1858, Sessions Acts of 1857-1858, ch. 117 p. 91, the directors of this company were increased, six of whom appointed by the Board of Public Works of Virginia and two appointed by the stockholders were to be residents of the Kanawha Valley and with the president of the company were to constitute a board known as the Kanawha Board, who were to be entrusted with the supervision of the Kanawha improvement, subject however to the instructions of the stockholders of The James River and Kanawha Company. On February 9, 1860, see ch. 18 of Acts of 1859-1860, pp. 116, 117, there was directed to be issued to be placed under the control of this Kanawha board of directors $300,000.00 of six per cent. registered stock of the Commonwealth, to be used by said Kanawha Board for the improvement of the Kanawha river from its mouth to Loup creek shoals ; and this Kanawha Board was made independent of the president and directors of The James River and Kanawha Company, which was known as the "Eastern Board." But The James River and Kanawha Company were first to execute a mortgage to the Commonwealth upon the works, property and net revenue of the said Kanawha line of improvement for the payment of the principal and interest of said $300,000.00. On the 25th of May, 1860, this mortgage was executed to the State of Virginia, as proven in this case. See statement of the case.

By the 13th section of said act, chapter 21 Acts of 1859–60

p. 118, it was provided, "that in case the said James River and Kanawha Canal Company shall not complete the canal to Covington or the western terminus of the Virginia Central Railroad within six years from the passage of that act, March 2, 1860, without any further application to the General Assembly for aid either by loan from the State, subscription or otherwise, all the property, rights, franchises and privileges of every kind and description of said company shall be transferred to and become the property of the State; and the private stockholders in said company should in general meeting assembled accept the provision of this act and duly certify their acceptance thereof to the Board of Public · Works." The only evidence of this acceptance proven in this case is the giving of said mortgage to the State of Virginia on May 25, 1860, which was done in pursuance of another section of this act. This canal was not completed in the time named; and by the Acts of 1871-2, chapter 82, section 1, page 29, Code of Virginia 1873, title 18, chapter 61, section 83, page 601, the State of Virginia released in favor of the James River and Kanawha Company the transfer or forfeiture which thereby enured to the State. The restored government of Virginia by an act passed February 3, 1863, in Wheeling, transferred to the State of West Virginia, when it should become one of the United States, all the property real, personal and mixed owned by or appertaining to the State of Virginia and being within the boundary of the proposed State of West Virginia. See Acts of 1862-3, chapter 68, page 58, section 1.

On March 3, 1869, see Acts of 1869, chapter 114, page 75, the Legislature of West Virginia reciting this act of the Virginia Legislature passed March 23, 1860, and also the fact, that the James River and Kanawha Company had accepted the provisions of this act, and also that so much of the property, rights, franchises and privileges of said company as are situated within the limits of West Virginia became and were vested in this State by virtue of the act of the Virginia Legislature at Wheeling passed on the 3d day of February, 1863, and that the James River and Kanawha Company having failed within six years from March 23, 1860 to complete the canal to Covington or the western terminus of the Virginia Central

Railroad did declare and announce, that "the Kanawha river and all dredges and other boats and property under the control of the Kanawha Board are now the property of this State free from all claims, incumbrances or control of any party, State or corporation," and enacted, that the Board of Public Works of West Virginia should appoint the directors of the Kanawha Board with power to sue and be sued as a body politic, who should control and supervise the Kanawha river according to the provisions of the acts of the Virginia Legislature passed February 15, 1858, and March 23, 1860, so far as they consist with the provisions of this act; that this Kanawha Board was authorized to borrow not exceeding $200,000.00 for the purpose of improving the navigation of the Kanawha river and to execute a mortgage to secure the same on the river, its improvements, revenues and property; that after the improvement of the river and the payment of the debts contracted therefor the rates of toll should be reduced, so as to yield only a sum sufficient to pay expenses and keep the works in repair; and by the 11th section of this act it was provided, that in the event, that the Board of Public Works should elect hereafter to proceed against the James River and Kanawha Company by inquisition, inquest or judicial proceeding in the name of this State more formally to ascertain the termination of their franchise over the Kanawha river, authority is hereby vested in it to institute such proceeding.

Money was under the authority of this act borrowed by the Kanawha Board and a deed of trust given to secure the same, as set out in the statement of the case, and a sinking fund has been and is being raised to pay off this debt.    A portion of this fund has been borrowed by the garnishees, Lewis Summers and the Kanawha Valley Bank respectively, and a portion of it is in the hands of the treasurer of the Kanawha Board.  Since April 5, 1871, the Board has been in the undisturbed possession and control of the Kanawha River.

Section 35 of article VI of our present Constitution (Acts of 1872–3, page 17,) provides:  " The State of West Virginia shall never be made defendant in any court of law or equity." Very different views are taken by the counsel for the plaintiff in error and the counsel of the defendants in error with reference to the relations, which by reason of these legislative

acts and these facts exist between the James River and Kanawha Company and its creditors and the Kanawha Board as now organized. The counsel for the defendants in error insist, that the act of the Virginia Legislature of March 23, 1860, when accepted by the James River and Kanawha Company, as it was by their giving the mortgage to secure the $300,000.00, which the State of Virginia by that act agreed to loan to the company, became, as was intended by the State and the company, a contract binding on both of them and amounted to an agreement on the part of the company, that in consideration of this loan of $300,000.00 by the State and of a subscription to its stock of $740,000.00 by the State " in case the said James River and Kanawha Company should not complete the canal to Covington or to the western terminus of the Virginia Central Railroad within six years from the passage of the act without any further application to the General Assembly for aid either by loan from the State subscription or otherwise, all the property, rights, franchises and privileges of every kind and description of said company shall be transferred to and become the property of the State." Virginia having by the act of February 23, 1863, transferred everything the State owned within the limits of West Virginia to it, and the James River and Kanawha Company having failed within the six years from March 23, 1860, to complete the canal as stipulated by the contract, it by virtue of this contract became the property of the State of West Virginia, and it was simply so declared by the act of March 3, 1869. And this being a purchase of property by the State from the James River and Kanawha Company for a large valuable consideration, this property can not be liable to any of the creditors of the James River and Kanawha Company ; but it is in the hands of the State of West Virginia as declared by the act of March 3, 1869, chapter 114, page 76, " free from all claims, incumbrances or control of any party, State, or corporation whatever."

This act, the counsel for the garnishees insist, did not amount to a declaration, that the charter of this company was forfeited; as this State could not declare a charter granted by the State of Virginia to be forfeited ; and in point of fact this company after the passage of this

act continued to carry on its business in Virginia. This corporation, as it had a right to do, if it acted in good faith, contracted for a valuable consideration to sell all its property and did so sell it; and the State of West Virginia owns it as a purchaser. The Kanawha Board is but a bureau of the State government; its incomes, tolls and revenues are the property of the State government; and therefore it can not be sued in any case. To sue it is to sue the State, which is prohibited by the Constitution. Besides the State has had adversary possession notorious and unchallenged of the Kanawha River, its tolls and franchises since March 3, 1869, through the Kanawha Board, and if it could be sued, it must be sued within five years from that date, or the suit would be barred by the statute of limitations.

These fundamental views of the counsel of the garnishees are utterly denied by the counsel of the plaintiff in error. He insists, that the act of the Virginia Legislature of March 23, 1860, was not a contract, by which the James River and Kanawha Company agreed to transfer all its property and franchises for a valuable consideration to the State, if the canal was not completed in six years. But if the canal was not completed, the charter of the company was liable to forfeiture at the end of that time; but that such forfeiture could not be declared by the Legislature, but must be judicially found, which has never been done; that the act of March 3, 1869, of West Virginia made the Kanawha Board the successor of the James River and Kanawha Company, and it holds the franchises, revenues, &c., of the James River and Kanawha Company in trust as a trust-fund first for the payment of the debts of the company. The whole object of this act was to give this State dominion over the old Kanawha Board, its property and franchises, but not to appropriate its revenues to the State in prejudice of the creditors of the James River and Kanawha Company. If it had attempted to do so, the act would have been unconstitutional as violating the obligation of contracts. It would, if so construed, be a mere attempt at *legislative robbery*. It is like the case of a corporation organized in a new name or divided in its line or jurisdiction, and in such case the corporation in its new name or if divided, each division is liable for the debts of the original corporation. A suit against the Kanawha Board

would lie ; for it is not making the State of West Virginia a defendant. But in this case what is sought is to make out of the debtors of the Kanawha Board the amount of a judgment, for which it is already responsible as the successor of the James River and Kanawha Company. This is no suit or equivalent to a suit against the Kanawha Board. The statute of limitations is no bar ; for the Kanawha Board has always held possession in subordination to the rights of the creditors of the James River and Kanawha Company, and in trust for them.

These conflicting views of counsel have been elaborately argued ; and numerous authorities are cited by the counsel respectively to sustain their respective positions. I do not think, that any of these questions are fairly presented by the record for it is in this case immaterial which of these views is correct. If those of the counsel of the defendant in error are correct, the judgment of the circuit court would have to be affirmed because there is no liability of the garnishees or any of them to the plaintiff in error, which could be enforced in any court or in any manner. If the views of the counsel for the plaintiff in error are correct, while there might be a liability on the part of the garnishees or at least one of them, the Kanawha Board, which might be enforced in a court of equity, yet there is no such liability on any of the garnishees, as could according to the law, as we have stated it above, be enforced by a garnishee-process; and therefore the judgment of the circuit court in this case would have to be affirmed. If it were true, as claimed by the counsel for the plaintiff in error, that this case comes within the influence of the principles laid down by the Supreme Court in *Mumma* v. *The Potomac Company*, 8 Pet. 281, *Curran* v. *The State of Arkansas et al.*, 15 How. 304, *Bacon et al.* v. *Robertson et al.*, 18 How. 480, it could only show, that plaintiff in error might have a right in a court of equity to subject the Kanawha Board or its assets to the payment of its debt ; and as this claim according to these cases, as I understand, could only be set up in a court of equity, it would follow on the principles we have stated, that the circuit court properly in this case refused to permit any enforcement of this supposed liability by this garnishee-process.

In *Bacon et al.* v. *Robertson et al.*, 18 How. 480, it was simply decided, that when a judgment of forfeiture was rendered against the Commercial Bank of Natchez, and a trustee was appointed to take charge of its books and assets, a bill could be filed by stockholders in a chancery court to have the surplus of the assets after paying the debts and expenses divided among the stockholders. But in this very case the court say: "It may be admitted, that the courts of law could not give any relief to the shareholders of a corporation disfranchised by judicial sentence in respect to a corporate right. Their modes of procedure do not provide for the case, as they do not for many others. 1 Plow. 276–277 ; *Richards* v. *Richards*, 2 B. & Adol. 447 ; Willes 1129," see page 484–485.

In *Mumma* v. *The Potomac Company*, 8 Pet. 281, where by an act of the Virginia Legislature the charter of the Potomac Company was vacated and annulled, and its powers and rights were vested in a new company then incorporated, viz: the Chesapeake and Ohio Canal Company, this act was held constitutional, and it put an end to the Potomac Company; but the obligation of its contracts survived, and the property of the company must be regarded, when it has not passed into the hands of a *bona fide* purchaser, as held by the Chesapeake and Ohio Company for stockholders of the Potomac Company and its creditors. In that case an effort to enforce a judgment at law by reviving it was held to be an erroneous mode of proceeding. As showing in what court in every case of this character the creditor must seek his redress, see *Mount Pleasant* v. *Beckwith*, 10 Otto (100 U. S.) 514. So in the case of *Curran* v. *The State of Arkansas et al.*, 15 How. 311 the court say: "The property of an insolvent trading corporation while under the management of its officers is a trust-fund in their hands for the benefit of creditors. It follows that a court of equity, which never allows a trust to fail for want of a trustee, would see to the execution of that trust, although by the dissolution of the corporation the legal title to its property had been changed."

In *Bacon et al.* v. *Robertson et. al.*, 18 How. 488, the court after showing, that the law in such cases affords no redress says: " It is a case therefore, in which courts of chan-

cery upon these well settled principles would aid the parties to realize the property belonging to the corporation and compel its application to the satisfaction of demands which legitimately rest upon it."

If it be true, as contended by the counsel of the plaintiff in error, that the Legislature of West Virginia by the act of March 3, 1869, transferred all the property and franchises of the James River and Kanawha Company in the Kanawha river to the Kanawha Board to be held as a trust-fund for the creditors of the James River and Kanawha Company, no creditors can make any demand on this trust-fund except in a court of equity. This property when so transferred was subject to a mortgage of $300,000.00 to the State. To ascertain what is proper to be done, if there be, as claimed, really any such trust, troublesome and lengthy accounts must be settled of the actings and doings of the trustees of the Kanawha Board, which could be settled only in a court of equity. The garnishees, Lewis Summers, The Kanawha Valley and C. C. Lewis obviously owe no debt to the James River and Kanawha Company, nor have they any effects of the company in their hands. They owe debts to and have effects of the Kanawha Board in their hands. But these can never be reached by a garnishee-process; for this, the statute expressly says, can be done only when they owe debts to the defendant in the execution or have personal estate of his in their hands. The whole proceeding against these garnishees is based on the idea, that the Kanawha Board and the James River and Kanawha Company are the same party. However this may have been prior to March 3, 1869, the Kanawha Board as then organized is obviously not the same as the James River and Kanawha Company. As to the garnishee, the Kanawha Board, if there be any liability on it either to the James River and Kanawha Company or to a creditor of that company, it is only as a trustee; and it could be held liable, if at all, only in a court of equity; and therefore it could not be held liable, as we have seen, by a garnishee-procees.

But on the theory of the counsel of the plaintiff in error it is claimed, that it might be held liable in a court of law, because the trust-fund has been perverted. To sustain this position he refers to *The United States* v. *State Bank,* 6 Otto (96

U. S.) 35, where this proposition is stated with however this important qualification. The language is: "The interposition of a court of equity is not necessary, when a trust-fund has been perverted. The *cestui que trust* can follow it at law as far as it can be traced." The fund sought in this case is money earned by dredges and other boats bought by the Kanawha Board with borrowed money and arising from tolls from their improvements, which had been received and earned by this board. It certainly has not been and cannot possibly be identified as a portion of the trust-property, which passed from the James River and Kanawha Company. For it obviously had no existence even, when the trust was created, if any trust has ever really been created. But an examination of the case in 6 Otto shows, that it has no application whatever to a case like the one before us; and the same may be said of *Taylor et al.* v. *Plumer*, 3 Mau. & Sel. 562; *Mooers* v. *White et als.*, 6 Johns. Chy. 360; *Bayne et al.* v. *United States*, 3 Otto (93 U. S.) 642, which are relied on to support this position by the counsel for the plaintiff in error.

The circuit court in this case in its judgment expressed this opinion: " That the said Stewart Eagle is not entitled to recover, and that he has no lien upon the moneys admitted to be in the hands of the Kanawha Board, the said Lewis Summers, the said Kanawha Valley Bank or said C. C. Lewis or any part thereof." We have declined to enquire in this case, whether he has any such lien, as might be enforced in a court of equity; and for the purposes of this case the above opinion, though we do not say it is incorrect, is not proper to be announced in this case. The only opinion proper to be announced is, that he is not entitled in this case to recover anything of any of said garnishees.

The judgment being in this respect amended must be affirmed; and the defendant in error must recover of the plaintiff in error to be levied out of the assets of his intestate in his hands to be administered their costs in this court expended and $30.00 damages.

JUDGES JOHNSON AND HAYMOND CONCURRED.

JUDGMENT AMENDED AND CONFIRMED.