# CHARLESTON.

## PARK *v.* McCAULEY.

### Decided February 15, 1910.

1. EXECUTION—*Lien—Property Subject.*

   A writ of *fieri facias*, in the hands of an officer for execution, is a lien upon a legacy given to the debtor.

2. SAME—*Enforcement of Lien.*

   A suggestion and summons to answer it, under sections 10 and 11, chapter 141, Code 1906, do not create a lien, but are only means of enforcing an execution lien already existing.

3. SAME—*Payment of Debt to Execution Debtor—Liability to Execution Creditor.*

   One paying an execution debtor a debt, with notice of an execution against him, is liable therefor to the execution creditor.

4. JUSTICE OF THE PEACE—*Execution—Lien.*

   An execution issued by a justice has the same effect as a lien as one issued upon a judgment of a circuit court.

Appeal from Circuit Court, Hardy County.

Bill by I. L. Park, who sues for the use of C. D. Bouman, against G. W. McCauley, executor, and others. Decree for defendants, and plaintiffs appeal.

*Reversed and Remanded.*

*Benj. Dailey* and *M. W. Gamble,* for appellants.

*H. B. Gilkeson* and *G. W. McCauley,* for appellees.

BRANNON, JUDGE:

C. D. Bouman recovered a judgment for money before a justice against John B. Russell. Annie R. Russell died having

made a will bequeathing her property to John B. Russell. Her property consisted of personalty. Bouman had an execution issued from the justice on his judgment and placed in the hands of a constable. The execution was docketed in the execution lien book in the county clerk's office under section 2, chapter 141, Code 1906. G. W. McCauley qualified as executor of Annie R. Russell. He had actual notice of the execution, and actual notice of such recordation, and that Bouman claimed from it a lien on the legacy in McCauley's hands as executor. (I state the fact of recordation, though it does not seem to me that recordation is notice to one paying, but only to a purchaser). Several months after the recordation and notice of the execution, McCauley, denying that the execution bound the money in his hands going to John B. Russell under said will, paid the money under it to John B. Russell. Then I. L. Park, the constable having the execution, and Bouman brought a chancery suit against McCauley as executor to enforce the lien of his execution against any money in the executor's hands going to Russell, if any yet was in his hands, and if not to compel the executor to pay the debt out of what money he had paid Russell after notice of the execution. The answer of McCauley admitted the facts alleged in the bill, and admitted notice of the execution before he paid the money to Russell, but denied that the execution was a lien on the legacy, or that he was liable for money which he had paid Russell. The decree absolved McCauley from liability for money so paid Russell, but decreed to him against McCauley a small sum yet in his hands, wholly insufficient to pay the execution. Park appeals for use of Bouman.

It is insisted by counsel that the execution is no lien on the legacy, because it is in the hands of the executor, and thus in *custodia legis.* It seems to us unreasonable to say that under the sweeping broad language of Code 1906, chapter 141, section 2, an execution is not a lien on money going to a legatee. The section says that the execution shall be a lien "upon all the personal estate of which the judgment debtor is possessed, or to which he is entitled, although not levied on nor capable of being levied on". Is not a legacy "personal estate to which he is entitled"? The legatee has it not in possession, but is entitled to it. What the object of this provision? To give

a lien on all personalty in possession, or to which the debtor is entitled, though not capable of being levied, as a chose in action. A legacy cannot be levied, but it is property, known in law as a chose in action. If the execution is no lien, then the creditor is without remedy. To think that a large legacy is not amenable to creditors. What other means has the creditor for enforcement of his debt? Look at the need to be answered, the object. This lien searches for and finds all personalty. It may be a legacy, in the hands of a receiver. Even if in *custodia legis,* though not otherwise to be enforced, it may get the creditor his money by application to the court in whose custody the fund is. A lien can be created on a fund in the hands of a court by execution. You have to go to the court for payment; but you have a lien. There are no exceptions to this lien save those in the section specified. I will not reiterate the cases construing this section given in so many decisions. The language is its own construer. *Huling* v. *Cabell,* 9 W. Va. 522; *Wiant* v. *Hays,* 38 *Id.* 681; *Puryear* v. *Taylor,* 12 Grat. 401; *Charron* v. *Boswell,* 18 *Id.* 216. In *Swann* v. *Summers,* 19 W. Va. 125, this Court said that a legacy could not be subjected by garnishment of the executor, he not owing a debt; but said, this *"fieri facias* clearly gives him a lien on his legacy." There it is held that suit may be maintained in equity by the motion of the officer or any one interested to enforce the lien. A pointed case to show that a *fieri facias* is a lien on a legacy enforceable in equity. It may even be attached so as to create a lien. *Vance* v. *McLaughlin,* 8 Grat. 289; *Sandredge* v. *Graves,* 1 Pat. & H. 101. Then, why not subject to lien by execution? The Code makes anyone liable for the lien paying to the execution debtor with notice of the lien. It is useless to refer to *Brewer* v. *Hutton,* 45 W. Va. 107, saying that property in custody of the law is not attachable and that neither the administrator nor a debtor of the estate can be garnisheed. Of course not, as that would give one creditor of a dead man preference over others, and hinder the settlement of the estate. When one dies his assets are for payment of all debts, and one creditor cannot by garnishing a debtor of the decedent get it out of lawful administration for all. That was an attachment of a debt going to an estate. This is a lien on a legacy payable after payment of debts. Different cases.

It is argued that McCauley having paid Russell before the chancery suit began is not liable. This was held by the circuit court, as this is given by the decree as a reason for absolving McCauley from liability. The suit created no lien. Without an antecedent independent lien the suit would have no ground on which to rest. It is a suit only to enforce the pre-existing lien of the *fi. fa.* Counsel seek to support that holding by saying that section 11 of chapter 141 touching suggestions to enforce execution liens against persons owing the debtor provides that if such person is liable at the time of service on·him of the summons to answer the suggestion, he shall be required to pay. Counsel say that this position is sutained by the fact that section 11 as in Acts 1872-3, chapter 218, was changed by chapter 127, Acts of 1882, to what it now is in the Code of 1906; whereas, before it read, "If it appear on such examination that there is any such liability on him, the court may order him to pay any debts or deliver any estate for which there is such liability", it now reads, under the Act of 1882, "If it appear on such examination or answer, that there is any such liability on him at the time of the service of the summons or at any time thereafter and before the time of answering or the return day of the execution, whichever comes first, the court may order him to pay". This theory is answered by the consideration that neither the suggestion nor the summons upon it creates or starts any lien. They are only a means of enforcing the antecedent lien of the execution. I think the Act of 1882 made no change on this point. Given an execution lien, and notice of it by a person owing the debtor, that person cannot pay the money to the debtor, and upon a suggestion answer that he had discharged himself from liability by such payment, saying that the money had been paid when the summons to answer the suggestion was served. Neither statute would allow this. If so, what is the worth of section 2 declaring the lien? What the force of its provision that he cannot pay the judgment debtor, if he have notice of the lien? Shall we give section 11 a meaning to enable the stakeholder to do what section 2 says he shall not do? Both sections in the same chapter. If the stakeholder have notice before service of the summons he is, at the date of service, liable under section 11 at the date of service of the summons upon the suggestion, in the words of the statute. If he pay before

notice, then he would not be liable at such service. Section 11 makes the stakeholder liable if when served he is liable, and he is still liable if he has made payment with notice. The suggestion does not destroy the prior lien, but on the contrary, has for its purpose the enforcement of it. The construction contended for would make the suggestion and the summons to answer it instruments to destroy it. Section 11 does not make the suggestion prejudice a prior lien, but enforces it. Indeed, if the stakeholder has no prior notice, the summons upon the suggestion would operate as notice and prevent after payment to the judgment debtor. I have said that the suggestion is not the parent of the lien, but only a garnishment process to enforce the execution lien. This is held in *Trevillian* v. *Guerrant,* 31 Grat. 525. The court said "The remedies afforded by the other sections of same chapter (188) were designed simply to enforce this lien of the execution. The lien itself is as complete and perfect without them as with them." In *Charron* v. *Boswell,* 18 Grat. 225, Judge Moncure said: "These proceedings do not give a lien, general or specific. They are merely a means provided by law for the enforcement of a legal lien which already exists". There can be no suggestion without execution lien. The very language of section 10, chapter 141, shows there is no basis for it without such lien, as it reads, "On a suggestion by a judgment creditor that *by reason of the lien of his writ of fieri facias* there is a liability on any person". We so held in *McKay* v. *McKay,* 33 W. Va. 725.

Another theory of counsel is, that whilst an execution from a circuit court may have the force above assigned, one from a justice has not such force. There comes, what to my mind seems strong in repulse of that theory, the argument that we ought not give statutes in the same code act made for remedy and enforcement of vital rights, a construction discriminative between suitors similarly situated. The law allows a suitor to go either into a circuit or justice's court. One suitor on a promissory note goes into the circuit court, and his execution has the wide lien given by Code 1906, chapter 141, section 2. It is a lien on choses in action not liable like chattels; on a legacy; on all personalty. Another suitor on a similar note goes into a justice's court, but his execution gives him a much narrower relief. He has right to levy on chattels or money,

but his execution is no lien on property not physical and leviable. Such is the contention. We cannot sustain it, and thus produce such partiality in the law, such inefficiency of remedy, between suitors alike circumstanced. It is said that the chapter controlling justice's court is here to control as the only law; but we think this is not infallibly so. In some instances we must read it along with other parts of the Code in matters *in pari materia,* as we did in *Livesay* v. *Dunn,* 33 W. Va. 453, holding the same statute of limitations applicable to judgments of both circuit and justice's courts. Both that and chapter 141 relate to the lien of an execution. Let us look at the provisions about this matter. Section 135, chapter 50, Code 1906, in the justices' chapter, makes an execution from a justice "command the person to whom it is directed to collect the amount due out of the *personal property* of the judgment debtor". This is broad. Section 139 makes it a lien on the "personal property of the judgment debtor liable to be seized under it". This, taken alone, imports only tangible, leviable chattels. Going to chapter 141, section 2, we find it saying, "Every writ of *fieri facias"* shall be a lien on the debtor's personal estate, whether leviable or not. No good reason, none but the most technical, demands that we exclude a justice's execution from the comprehensive expression "Every writ", but, as suggested above, harmony between remedial sections in the same Code on the same matter, equality between suitors similarly situated, forbid it. Another clause says that when the execution is docketed it shall be an abiding lien from the time it is delivered to the "sheriff or other officer". What other officer? Why not say a constable holding an execution from a justice? Why not? It seems to me that section 6 of chapter 141, gives strong evidence to show that a justice's execution has the width of lien given by section 2. Section 4 allows interrogatories to be put to the debtor before a commissioner to find what estate the lien covers. Section 6 requires the commissioner to return papers "to the court in which the judgment is, or if the judgment be of a justice, to the circuit court". It is suggested that section 118, chapter 50, Code 1906, provides for filing in the circuit court office a transcript of the judgment from the justice's docket, and execution may be issued thereon with like effect as upon a judgment in the circuit court. From this we are to say that the only

way by which execution on a justice's judgment can be issued to have the same effect as a lien as an execution on a circuit court judgment, is by filing such transcript in the clerk's office. That provision had no such office. Perhaps the owner of the judgment might prefer to have a sheriff collect over a constable, or have it of more permanent or more accessible record, or have a suggestion, or send execution to another county. For these reasons, perhaps others, this provision was made. We hold that a justice's execution has the same force as a lien as one on a circuit court judgment.

We reverse the decree and remand the case to the circuit court with direction to enter a decree for the plaintiff against McCauley for proper amount and costs.

*Reversed and Remanded.*