McGINNIS HATFIELD, *Sheriff, ex rel.* LARRY ROSE *v.* L. K. CRUISE, *et al.*

(No. 8900)

Submitted September 26, 1939. Decided December 12, 1939.

*Capehart & Miller,* for plaintiff in error.
*Crockett & Tutwiler,* for defendant in error.

Riley, Judge:

McGinnis Hatfield, sheriff of McDowell County, West Virginia, who sues at the relation of Larry Rose, instituted this action against L. K. Cruise, deputy sheriff of said county, and United States Fidelity & Guaranty Company, surety on his official bond, to recover the statutory penalty provided by Code, 38-8-8, for alleged improper detention by the deputy of personal property under a lien of execution after plaintiff had claimed the statutory exemption and demanded a release from the lien. To a judgment in defendant's favor, based upon an agreed statement of facts, this writ of error is prosecuted.

On certificate, involving the sufficiency of the declaration, this court held that the bond was an official bond. *Hatfield, Sheriff, etc.* v. *Cruise et al.,* 120 W. Va. 16, 197 S. E. 23.

For convenience, the agreed statement of facts is stated almost verbatim as follows:

On February 8, 1936, Bluefield Sanitarium, a corporation, obtained a judgment before a justice of the peace against Larry Rose, in the amount of $155.00 with costs; that the claim upon which this judgment was based had been placed by the sanitarium in the hands of one C. G. Taylor, of Bluefield, representing himself to be a collection agency, who directed all the steps taken in the prosecution of the claim to judgment, its collection and the issuance of execution; that on April 13, 1936, Taylor had an execution issued by the justice upon the judgment and placed in the hands of deputy sheriff Cruise, and on the same day sent a notice of lien of *fieri facias* to Kingston-Pocahontas Coal Company, Rose's employer, signed Bluefield Sanitarium, Inc., by C. G. Taylor; that the coal company, upon receiving the notice, informed Rose that it could not pay him the money due at the following payday or give him further credit at the company's store; that Rose being a husband and parent prepared a schedule in accordance with Code, 38-8-3, claiming an exemption of his wages due from the coal company and his house-

hold property, which were less than $200.00 in value; that the schedule was delivered to Cruise, who promptly forwarded it to Taylor and Taylor forwarded to the coal company a "Release of Exempted Property" which had the notation thereon that "The lien continues in full force and effect and is binding on the garnishee until the return date as shown thereon"; that the coal company released $38.00 earned by Rose as of April 25, 1936, the date said schedule was filed, but because of the language contained in the release, refused to pay Rose anything he had earned after the last-mentioned date, and held all money due him until June 4, 1936, when Taylor delivered to the coal company a release executed by Cruise, having Taylor's approval indorsed thereon; and that immediately upon the receipt by the coal company on April 30, 1936, of the "Release of Exempted Property", Rose says he informed Cruise of the contents of the paper and requested an unconditional release, which, however, Cruise does not remember.

The notice of April 13, 1936, is a part of the record herein. It recites that the judgment was entered against the defendant and that the writ of *fieri facias* was returnable June 12, 1936, and is a lien against all the personal estate to which the debtor was entitled on date of issuance or to which he might thereafter and before the return day become possessed or entitled. It contains a warning to the effect that all persons who hold any personal property to which the debtor "is now or may hereafter become entitled" will be held personally liable "for any payments or deliveries made" to said debtor.

The solution of this case lies in the construction of the statutes of this state involving execution liens (Code, 38-4-8, 9), suggestions in justice courts (Code, 50-13-13, 14, 15, 17, 18, 19, 20), and the exemption of personal property under Article VI, Section 48, West Virginia Constitution (Code, 38-3-5, 6, 7, 8).

Code, 38-4-8, provides that an " * * * execution shall create a lien, from the time it is delivered to the * * * officer * * * upon all of the personal property, * * *

owned by the judgment debtor at the time of such delivery of the writ, or which *he may acquire on or before the return day thereof * * ** Such lien shall continue beyond the return day of the execution, whether the writ was levied or not * * *." (Italics supplied). In *Park* v. *McCauley,* 67 W. Va. 104, 109, 67 S. E. 174, 28 L. R. A. (N. S.) 1036, 21 Ann. Cas. 199, this court held that an execution issued by a justice has the same force, as a lien, as one issued upon a judgment of the circuit court. Code, 38-4-9, provides, in part, that "If the property, upon which such writ is a lien, is a debt or liability of some third person to pay money or deliver property to the judgment debtor, any payment or delivery made by such third person to the judgment debtor or his assignee, before such third person has notice of the writ, shall be good, and such person shall be discharged, to the extent of such payment or delivery, from any liability to the judgment creditor * * *." Under the last-mentioned provision of the statute, the lien attaches from the time the execution is delivered to the officer, but persons holding a lien debtor's personal property may deliver or pay over the same to the debtor at any time before he has notice of the outstanding execution. If, on the other hand, where one who holds an execution debtor's personal property or money, and thereafter with notice of the execution, delivers or pays the same to the debtor, he is liable therefor to the execution creditor. *Park* v. *McCauley, supra.* It thus seems clear that upon the receipt of the notice by the relator's employer, the latter could not, without incurring liability therefor to the judgment lien creditor, pay the wages which accrued after the $38.00 was released, nor could the employer pay the money to the judgment lien creditor or to enforcing officer without a suggestion as provided by Code, 50-13. Here, of course, the requirements of the last-mentioned article of the Code as to suggestions issued by justices of the peace were not met. This article requires that the judgment lien creditor shall file before the justice an affidavit setting forth the suggestee's name; thereupon

the justice shall enter an order, which order, to be effective on the suggestee, must be served upon him. Under the circumstances, we do not entertain the view that the employer withheld the money because of the wrongful, joint or separate actions of either the judgment creditor's agent, Taylor, or the deputy sheriff. We say this because suggestion is not necessary to create the lien. It is, as Judge Brannon said in *Park* v. *McCauley, supra,* simply the means of enforcing an execution lien already existing. See *Exchange Bank of Mannington* v. *Beatty,* 107 W. Va. 129, 132, 147 S. E. 475, as to garnishments. That being so, notice to the employer only was required to prevent payment to the relator of the money in its hands; and Taylor, as the judgment creditor's agent, had the right in the protection of his principal's interest to give that notice, which he did. Though perhaps too threatening in its terms, this notice informed the employer of its liability in the event of payment to the relator, and met the requirements of Code, 38-4-9. This provision of the statute evidently contemplates that the notice required be nothing more or less than actual knowledge or notice. The statute contains no provision for the service of notice, nor does it prescribe any formality to make it effective.

If the judgment creditor or his agent committed no wrong, it is quite difficult to see how the enforcing officer did wrong in simply standing by passively holding an execution in his hands and not interfering with the judgment creditor in the protection of his rights by the giving of the notice, something which the creditor, in the first instance, had the right to do.

But it is said that the relator Rose, after the delivery to the employer of the release for the $38.00, which likewise, as appears from the statement of fact, recited that the lien continues in effect until the return date of the execution, demanded that the officer give him an unconditional release, and because the officer did not do so he is liable. The answer to this contention lies in the provisions of the Code which provide for the exemption of

personal property to the amount of $200.00 under Article VI, Section 48, West Virginia Constitution. Code, 38-8-3, clearly provides that when a debtor claims personal property as exempt, he shall deliver to the officer a list by separate items, with the value of each item of the personal property sought to be exempted, and the officer shall exhibit the same to the creditor. Thus, in the absence of an agreement with the judgment creditor, the officer cannot release the debtor's property in the hands of a third person, unless the formal provisions of the statute have been complied with by the delivery of a schedule. This court, time and again, has held that the relief afforded by the exemption statute is exclusive. In *Hibner* v. *Belcher,* 115 W. Va. 387, 176 S. E. 422, Judge Hatcher, speaking for the court, said: "The statutory regulations have been held to be exclusive." Accord: *Taylor* v. *Belville, Trustee,* 70 W. Va. 484, 74 S. E. 517; *Reeves* v. *Ross,* 62 W. Va. 7, 12, 13, 57 S. E. 284. See also, *Preston* v. *Hufford,* 81 W. Va. 510, 94 S. E. 960, to the effect that property not listed is not exempted. For these reasons the relator here, not having presented a schedule, cannot complain of the officer's refusal to deliver a release to the employer, and the penalty provided by Code, 38-8-8, for the failure of an officer to release money or property in his control which shall have been exempted cannot be invoked under the instant record.

Plaintiff's counsel, however, suggest that the prior decision of this court established the law of this case on the point under consideration. The law of the case rule, we think, should not be applied under the circumstances of the instant case because: (1) on the former hearing, as shown by the court's opinion, this court took under consideration only the question whether or not the officer's bond was an official bond under the statute; (2) the circuit court's certificate was very general indeed and did not specifically refer to the question now under consideration; and (3) the surety company's demurrer was directed only to the sufficiency of the bond, and the officer's demurrer did not specifically direct the circuit

court's attention to the effect of the notice given to relator's employer by Taylor as the agent of the judgment creditor. For the exceptions to the rule as to the law of the case, see *Pennington* v. *Gillaspie,* 66 W. Va. 643, 66 S. E. 1009, syl. point 7.

For the foregoing reasons, the order of the trial court is affirmed.

*Affirmed.*