# LITTLE ROCK AND FORT SMITH RAILWAY *v.* HUNTINGTON.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

Submitted January 6, 1887. — Decided January 24, 1887.

A mortgage of a railroad and of lands granted by Congress to aid in its construction to trustees, which directs the trustees to apply moneys arising from the sale of the lands to the payment of the coupons attached to the bonds secured by the mortgage, also authorizes them to purchase therewith over-due coupons which have been cut from those bonds and have been deposited with the trustees of the mortgage for the purpose of securing scrip issued to the holders of those coupons, with the object of extending the payment of the amount due on them beyond the time of payment named in them.

BILL in equity. The case is stated in the opinion of the court.

*Mr. William S. Rogers* for appellant.

*Mr. C. W. Huntington* for appellees.

Mr. Justice Field delivered the opinion of the court.

The Little Rock and Fort Smith Railway is a corporation organized under the laws of Arkansas, and the defendants are citizens of Massachusetts, and trustees under a mortgage or deed of trust executed to them by the corporation on the 19th of December, 1874. The bill is filed to enforce the performance of certain trusts devolving upon the defendants under that instrument.

By the act of Congress of July 28, 1866, a grant of land was made to the State of Arkansas, to aid in the construction of a railroad from Little Rock to Fort Smith. The grant was of ten alternate sections of land on each side of the road, with a right of way over land of the United States to the width of two hundred feet.

By legislation of Arkansas, in 1869, the right to the lands thus granted by Congress became vested in the Little Rock and Fort Smith Railway Company. In December following, that corporation executed a mortgage upon its road, equipments, franchises, and property to secure its bonds to be issued thereunder to the amount of $3,500,000, and in June, 1870, it executed a second mortgage upon the same property to secure its bonds to be issued to the amount of five millions of dollars. The bonds were issued, but the company defaulted in their payment, and both mortgages were foreclosed, and the property was sold under a decree of the Circuit Court of the United States for the Eastern District of Arkansas.

The purchasers at such sale, under a statute of Arkansas, organized themselves into a corporation, and adopted as their corporate name that of the Little Rock and Fort Smith Railway, and became vested with all the rights, privileges, powers, and franchises of the former corporation, together with the lands granted to that company by the acts of Congress and of the legislature of Arkansas.

This new company, the plaintiff herein, in order to provide means for the completion and equipment of its road, and for other purposes, issued and negotiated a series of bonds, amounting in the aggregate to three millions of dollars,

payable to bearer at the end of thirty years from January 1, 1874, with interest coupons payable semi-annually at the rate of seven per cent. per annum, free from any United States tax. The bonds were issued in denominations of one thousand dollars each, from No. 1 to 2000 inclusive, and in denominations of five hundred dollars each, from numbers 2001 to 4000 inclusive. To secure their payment, principal and interest, the company executed a mortgage, or deed of trust, bearing date December 19, 1874, upon its road, franchises, rights, and lands, to the defendants, Huntington and Ripley, in trust, among other things, to apply the moneys arising from the lands of the company, after deducting the expenses of executing the trust, as follows:

1st, to the payment of the coupons or interest warrants attached to the bonds, as fast as they shall become due and payable, to the extent that the net earnings from the business of the road shall be insufficient for that purpose.

2d, to the purchasing and cancelling of such outstanding bonds as can be obtained, at their market value, not exceeding, however, a premium of ten per cent.; and

3d, to the payment of such of the bonds as shall not have been purchased in accordance with these provisions, when the same shall become due and payable.

All the trust moneys coming to the trustees, not applied or used in accordance with the above provisions, were to be invested in United States securities, or lent from time to time in such manner as by the law of Massachusetts is permitted to savings banks. The interest derived from such investments or loans was to be applied by the trustees to the payment of the bonds or coupons.

The bill alleges that, after the execution of this mortgage, the company completed its railroad from Little Rock to Fort Smith, within the time, and in the manner required by the acts of Congress and of Arkansas, and thereby became the owner of 1,057,000 acres of land, as certified by the Secretary of the Interior to the state, all of which, and the proceeds of sales, were subject to the trusts and charges imposed by the mortgage or deed of trust; that the corporation has disposed of all

the bonds authorized to be issued under the mortgage, but that of the lands there still remain unsold 623,000 acres; that during the years 1877, 1878, and 1879, and the first six months of the year 1880, the net earnings derived from the operation of the road, even when united with the proceeds of the sales of lands, were insufficient to meet the coupons or interest warrants attached to the bonds maturing on January 1, 1878, July 1, 1878, January 1, 1879, July 1, 1879, and January 1, 1880; and thereupon an agreement was made between the corporation and the holders of the bonds and coupons payable on those dates, by which the holders surrendered to the defendants, trustees, the coupons, and the corporation issued to them negotiable scrip or certificates by which it promised to pay the trustees, or bearer, the amount of the coupons surrendered, in ten years from their maturity, with interest at the rate of seven per cent. per annum, payable semi-annually, the corporation reserving the right to pay the scrip and interest at any time previous to its maturity.

The scrip or certificate also provided that the trustees should hold the coupons surrendered, as collateral security for the payment of the scrip thus issued therefor, and that the coupons should not be surrendered or cancelled until the scrip should be paid. The coupons maturing on July 1, 1883, and January 1, 1884, were also unpaid, and a similar arrangement was made with the holders of these coupons by the issue of scrip for them; so that the whole amount of scrip issued for coupons thus unpaid was $636,000.

The bill also alleges that out of the moneys received from the sale of the lands since the execution of the mortgage, the trustees have bought and cancelled bonds amounting to $536,500, besides appropriating moneys to aid the corporation in paying the interest coupons attached to the bonds; that since the year 1881 the trustees have applied the net proceeds of the sales to the purchase and cancellation of the bonds, and no part thereof to the purchase and cancellation of the said scrip, or the coupons held by them as collateral security for the payment of that scrip; that for several years, the net earnings of the road have been more than sufficient to enable the corpo-

ration to pay its current coupons and the interest upon the scrip; that the corporation has notified the trustees, that it was no longer necessary to retain any portion of the proceeds of sales for the payment of the interest coupons to mature hereafter; that the net earnings of the road would, in all probability, be ample for that purpose, and, by reason of the increased earnings, will continue to be more than ample to pay the coupons as they severally become due and payable; and that the price of the bonds has greatly risen in value, and the premium thereon has varied the past year from thirteen to seventeen per cent., so that under the mortgage the trustees are no longer able to purchase such bonds, being limited by the mortgage to the payment of ten per cent. premium.

The bill also alleges that 623,000 acres of the lands of the company remain unsold; that the trustees hold contracts for lands sold, upon which partial payments have been made, but upon which deeds are not to be executed until the purchase money and interest are fully paid, amounting in the aggregate to more than the sum of $428,691; and that in the ordinary course of business, the trustees and their successors will have large amounts of money from sales thereof, which must be applied by them in accordance with the provisions of the mortgage, and in the order of priority, before the moneys can be invested, as provided therein; that the trustees have refused to apply any of the said money to the payment of the outstanding coupons for which the scrip mentioned was given; that such coupons draw interest at the rate of seven per cent., and any investment of such moneys by the trustees can only be made so as to obtain a much smaller rate of interest, and that, therefore, it would be greatly to the advantage of the corporation, and to the bondholders, that such moneys should be applied to taking up the outstanding coupons. The trustees, in their answer to the demand of the corporation that the moneys be so applied, have expressed a willingness to so apply them, but they entertain doubts as to their authority so to do, unless directed by order of the court.

The mortgage, as is seen by its terms, contemplates that the proceeds of sales of lands shall be applied to the payment

of the interest coupons to the extent that the earnings of the road are insufficient for that purpose. The contract, by which the time to pay those coupons, for which the scrip was issued, was extended for ten years, does not release the corporation from its obligation, provided it is in funds from the earnings of the road and the sales of its lands. The coupons are not cancelled, but are still held as collateral security for the scrip issued. The inability of the company to pay such coupons from the earnings of the road, combined with the proceeds of the sales of the lands, which led to the contract for the scrip, no longer exists, and there is no legal impediment in the way of the trustees taking up such coupons, notwithstanding the contract deferring their compulsory payment for ten years. The money received from the sales of the lands cannot be used in purchasing the bonds of the company, which are now at more than ten per cent. premium, and the trustees are restricted in their payment to that premium. Any investment under the law of Massachusetts would bring them only a moderate interest, probably not exceeding four per cent. The coupons draw seven per cent. There is, therefore, a manifest propriety and justice in the demand of the corporation that the surplus money from the sales of its lands, instead of being thus invested, should be applied to taking up the outstanding coupons. And it is the plain duty of the trustees, in the execution of their trust, to make the proceeds of the sales of lands as available as possible for the extinction of the indebtedness of the corporation, first on its coupons, and then upon its bonds, so long as the same can be bought at a premium not exceeding ten per cent.

*The decree of the court is, therefore, reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.*