WONDERLY v. LAFAYETTE COUNTY, Appellant.

Division One, June 14, 1899.

1. **Practice**: ADMISSIONS IN ANSWER: EVIDENCE. In a suit founded on a judgment rendered in another court, if the answer admits the rendition of the judgment it is not necessary for plaintiff to introduce a transcript of the judgment in evidence.

2. **Judgment**: ASSIGNMENT: EVIDENCE: NOTE ON MARGIN. The noting of an assignment of a judgment on the margin of the record in a Federal court is not competent evidence to prove the assignment in a court of this State. Section 6043, Revised Statutes 1889, relates only to judgments of courts of this State.

3. ———: ———: ———: CLERK'S CERTIFICATE. Nor can an assignment of a judgment in a Federal court be proven by the certificate of acknowledgment taken before a clerk of a Federal court in another State.

4. ———: OF FEDERAL COURTS: JURISDICTION. Judgments of the circuit courts of the United States are entitled to equal rank and presumption of regularity as are judgments of the circuit courts of this State. And in a suit in a State circuit court, praying for judgment upon a judgment rendered in the Federal circuit court, it is not necessary to set out in the petition facts to show the Federal 'court had jurisdiction, nor can such suit be defeated on a plea at law that it did not have jurisdiction.

5. ———: ———: ———: COLLATERAL ATTACK: FRAUD. Such judgment is not subject to collateral attack. But it may be attacked in a direct proceeding in equity in a State circuit court on the ground that it was procured through fraud. And in a suit to recover judgment in a state court upon such Federal court judgment the defendant may plead as a defense that it was concocted and procured by fraud, and if the fraud is established said judgment may be annulled, and the court may perpetually enjoin the plaintiff from, in any manner, attempting to enforce or make any use of it.

6. ———: ———: FRAUD: BY COLLUSIVE TRANSFER OF COUNTY BONDS. The plaintiff was the owner and holder of certain county bonds, issued under a statute of this State, which the Missouri courts had frequently declared unconstitutional, but which the United States court held to be constitutional. He was a resident of this State and under the Federal statute he could not sue a county in the Federal court of this State. He, therefore, collusively and fictitiously transferred the bonds to a citizen of Illinois, and suit was brought in his name in the Federal court, judgment obtained and assigned to plaintiff, and then plaintiff brought suit in the state court upon the judgment thus recovered in the name of the Illinois citizen in the Federal court. *Held*, that the judgment was obtained through fraud and the establishment of these facts by defendant barred plaintiff's right to recover thereon in the State court, although the fictitious transfer might have been pleaded as a defense in the Federal court—the reason being, that the collusive transfer was wholly within the knowledge of the assignor and assignee, and they concealed that fact from the defendant, and thereby prevented it from making that defense. Such concealment attaches to the judgment itself and vitiates it.

7. ———: ———: ———: ———: FRAUD IN PROCURING JUDGMENT. Such fictitious transfer of the bonds and the collusive concealment of the transfer constitute fraud in the procuring of the judgment.

8. ——: ——: ——: FRAUD IN LAW.   Plaintiff's action in mask-
ing as a citizen of Illinois in order that he might gain jurisdiction in
the Federal court in this State, and in permitting such citizen to sue
in his own name and to assert in his petition that he was the owner
of the bonds, upon which judgment was obtained in the name of such
Illinois citizen, was a fraud on the court, and since by that means
he evaded the laws of this State applicable to his cause of action,
his judgment became a fraud in law, and hence is not entitled to the
protection of the laws of this State.

*Appeal from Lafayette Circuit Court.*—HON. RICHARD
FIELD, Judge.

REVERSED AND REMANDED.

WM. AULL, J. M. LEWIS and ELIJAH ROBINSON for
appellant.

(1)   Plaintiff's petition does not state facts sufficient to
constitute a cause of action.   It fails to state any facts showing
that the United States court, in which judgment in the Owings
case was rendered, had any jurisdiction, either of the person of
the defendant or the subject-matter of said suit.   Nor does it
contain any averments which are by law made tantamount to a
statement of facts showing jurisdiction.   That court, being
a court of limited jurisdiction, it was absolutely necessary,
either to set forth the facts, or to allege, in compliance with the
terms of the statute, that said judgment was duly rendered.
(2)   The fact that plaintiff was the actual owner of the bonds
which are the basis of the judgment in the Owings case, and
that he transferred said bonds to Owings to have suit brought
on them in the United States court constituted a fraud.   Wil-
liams v. Nottawa, 104 U. S. 209; Farmington v. Pillsbury, 114
U. S. 138; Hartog v. Memory, 116 U. S. 588; Morris v. Gil-
mer, 129 U. S. 315.   (3)   Fraud in procuring a judgment at
law is always good ground for coming into equity to set aside
the judgment.   Freeman on Judgments, secs. 489 and 491;
Fish v. Lane, 2 Hayw. 522; Noyes v. Loeb, 24 La. Ann. 48; Pratt

v. Wortham, 5 Mason, 95; Ocean Ins. Co. v. Fields, 2 Story, 59; Reed v. Harvey, 23 Ark. 44. (4) When the facts are known to plaintiff but unknown to defendant, and purposely concealed from defendant by plaintiff, that is sufficient excuse for not setting them up as a defense. Shinkle v. Letcher, 47 Ill. 216; Dunlap v. Cody, 31 Ia. 260; Jackson v. Jackson, 1 John. 424; Peel v. January, 35 Ark. 331; Payne v. O'Shea, 21 Mo. 133; Bresnahan v. Price, 54 Mo. 422. (5) Under our system of practice any facts which would require a court of equity to set aside a judgment, may be set up as a defense in an action on the judgment. Freeman on Jud., sec. 435; Ward v. Quinlivin, 57 Mo. 425.

FREDERICK A. WIND for respondent.

(1) The petition states a cause of action. (a) In pleading the judgment of a United States court it is not necessary to plead facts showing jurisdiction. Reed v. Vaughan, 15 Mo. 137. (b) Any formal defect in the petition is waived by pleading over after demurrer was overruled. (c) Any defective averment, concerning the judgment sued on, is made good by the answer, which admits rendition of the judgment. (2) The Federal court had jurisdiction to hear and determine the cause of Owings v. Lafayette county; even if it be admitted that Owings was not the absolute owner of the bonds, but held them for benefit of Wonderly. (a) The petition averred that Owings was the owner for value of the bonds, and that he was a citizen of Illinois, and defendant a citizen of Missouri; and this averment gave the court power to determine the facts of ownership and citizenship, which the court is conclusively presumed to have done, and its judgment as to these facts can never be contradicted. Erwin v. Lowry, 7 How. 172; Hartog v. Memory, 116 U. S. 588; Railroad v. Ia. Homestead Co., 123 U. S. 552; Mattocks v. Baker, 2 Fed. 455; Holmes v.Railroad, 9 Fed. 237; Nichols v. Stevens, 123 Mo. 115; Reed v.

Vaughan, 15 Mo. 137.     (b) Even if the petition contained no averment as to citizenship of the parties, the judgment would be valid.     McCormick v. Sullivant, 10 Wheat. 199; Railroad v. Ia. Homestead Co., 122 U. S. 559; Dowell v. Applegate, 152 U. S. 335; Skirving v. Ins. Co., 59 Fed. 742; McClanahan v. West, 100 Mo. 320.     (c) And although the record showed that all the parties were citizens of the same State, still the judgment rendered would be valid.     Railroad v. Homestead Co., 123 U. S. 552; Evers v. Watson, 156 U. S. 533.     (d) And it is none the less conclusive because the judgment was by default.     Harshman v. Knox Co., 122 U. S. 306; Nichols v. Stevens, 123 Mo. 96.     (e) A transfer made for the purpose of vesting title in a non-resident, and thereby giving a Federal court jurisdiction, was not considered a fraud upon the defendant or upon the Federal court, and did not prevent the Federal court from acquiring and maintaining jurisdiction. McDonald v. Smalley, 26 U. S. 620; Barney v. Baltimore, 73 U. S. 280: Hartog v. Memory, 116 Mo. 588; Skillern v. May, 6 Cranch. 267; Railroad v. Ia. Homestead Co., 123 U. S. 559; Evers v. Watson, 156 U. S. 533.     (f) In an action on a judgment, fraud on the jurisdiction is no answer if service was had on defendant.     Fraud in assignment can not be pleaded as defense.     Christmas v. Russell, 5 Wall. 290; Maxwell v. Stewart, 89 U. S. 77.     (g) The failure to plead was an admission of the truth of the averments, and was a waiver of any fraud that might have been practiced upon the court and the defendant, by the assignment of the cause of action.     Mattocks v. Baker, 2 Fed. 455; Marsh's Admr. v. Bash, 41 Mo. 493; Duncan v. Gibson, 45 Mo. 352.     (3)     Equity will never interfere with a judgment unless it was procured by fraud; i. e., unless there was a fraud practiced in the proceeding which resulted in rendition of the judgment.     Bates v. Hamilton, 144 Mo. 11; Hamilton v. McLean, 139 Mo. 678; Nelson v. Barnett, 123 Mo. 570; Nichols v. Stevens, 123 Mo. 115; Richardson v. Stowe, 102 Mo. 33; Irvine v. Leyh, 102 Mo. 206;

Smith v. Sims, 77 Mo. 272; Payne v. O'Shea, 84 Mo. 135; Murphy v. DeFrance, 101 Mo. 155; Skirving v. Ins. Co., 59 Fed. 742. (a) The fraud can not consist in an untrue averment in the statement of the cause of action, for if the defendant was served with process he had an opportunity to deny it and defeat recovery, and the judgment is conclusive of every fact averred or necessary to a recovery. Nichols v. Stevens, 123 Mo. 115; Richardson v. Stowe, 102 Mo. 33; Irvine v. Lehy, 102 Mo. 206; s. c. 124 Mo. 365; Payne v. O'Shea, 84 Mo. 135; High on Injunctions, sec. 180; Smith v. Sims, 77 Mo. 270. (b) Defendant having been served with summons, can defend on ground of fraud in procurement of the judgment only in the court which rendered judgment. Mark v. Fore, 51 Mo. 70; DeGraw v. DeGraw, 7 Mo. App. 128; Callahan v. Griswold, 9 Mo. 792. (4) The answer does not show diligence in discovering the alleged fraudulent act; it does show laches. The petition avers the assignment of the judgment of record over nine years ago, which the answer admits, but the answer does not show any reason why defendant did not originally investigate the fact of ownership, nor why it has not in the time since judgment was assigned inquired into original ownership of the bonds. Defendant could have taken depositions of Wonderly and Owings before and since rendition of judgment, as it has since institution of the suit. High on Investigations (2 Ed.), secs. 190 and 191; Wilder v. Lee, 64 N. C. 50; Lansing v. Eddy, 1 Johns. Ch. 49; 1 Black on Judgments, sec. 365; Nevins v. McKee, 61 Tex. 412; Smith v. Sims, 77 Mo. 274.

VALLIANT, J.—This is a suit begun 18th September, 1895, in the circuit court of Lafayette county upon a judgment rendered 31st of October, 1885, in the circuit court of the United States for the Western Division of the Western District of Missouri in favor of one Francis D. Owings against Lafayette County for $11,791.45, and alleged to have been

assigned to the plaintiff Wonderly. The petition alleges the issuance and service on defendant of the summons, the return of same, and rendition of judgment and assignment thereof to plaintiff; that the cause of action on which it was found consisted of bonds and coupons bearing interest at 10 per cent per annum from maturity. The petition did not state facts showing that the suit in which the judgment was rendered was within the jurisdiction of the Federal court nor did it state that the judgment had not been paid.

Defendant by its amended answer admitted the rendition of the judgment and denied the assignment. Then the answer proceeded affirmatively to state a case for equitable cognizance charging that the judgment was procured by fraud and praying that it be set aside and annulled. In substance the charge of fraud was that the bonds and coupons on which the judgment was founded were issued under a certain act of the General Assembly of Missouri named, which was in conflict with the Constitution of the State and was therefore invalid, and the bonds and coupons were null and void. That under the laws then existing the circuit courts of the United States within this State, had jurisdiction of suits involving more than $2,000, wherein a citizen of another State was plaintiff and a citizen of this State defendant. That prior to the institution of the suit in which the judgment sued on was rendered, the Supreme Court of this State had in numerous decisions adjudged the act of the Legislature mentioned unconstitutional and void, and bonds purporting to be issued thereunder of no force and effect; but that the courts of the United States had taken a contrary view and had decided that the act was constitutional and valid, and bonds issued under it binding obligations. That prior to the institution of that suit the plaintiff in this suit was fully advised of the decisions of the Supreme Court of this State, and also of those of the United States courts on that subject, and he knew that if he sued on those bonds and coupons in a court of this State the result.

would be a judgment for defendant, but if he sued in the Federal court the probability was that the bonds would be held valid and he would obtain a judgment on them.    That at the time that suit was instituted in the name of Owings he was not the owner of the bonds or coupons, but the same were the property of the plaintiff in this case, and he and Owings both knowing how the Missouri courts had held, and also how the Federal courts had held, "combined and conspired together for the purpose of wronging, cheating and defrauding this defendant, and of imposing and perpetrating a fraud upon the jurisdiction of the United States Circuit Court within and for the Western Division of the Western District of the State of Missouri, and in pursuance of such combination and conspiracy, the said plaintiff and the said Owings falsely and fraudulently pretended the said plaintiff had sold and assigned and transferred to said Owings the aforesaid bonds, and thereupon the said Owings, pretending to be the holder and owner of said bonds, instituted said suit in said United States Court."    That all the time the plaintiff was and still is a citizen of Missouri and Owings was and still is a citizen of Illinois; that the pretended transfer to Owings was to enable the plaintiff in that name to use the United States court, to obtain a judgment which he knew he could not obtain in his own name.    That defendant had no knowledge or information as to the real ownership of the bonds or of the facts in regard to the pretended assignment until November, 1895.    That if defendant had had any knowledge or information of the fraud it would have made the defense in that court but that the plaintiff and Owings, knowing that the defendant was ignorant of the real ownership and pretended transfer, kept the facts secret, and defendant was thus prevented from raising the question of jurisdiction in that court.    That defendant had no information or intimation of the real ownership of the bonds and the fraud that had been practiced, until after the institution of the

present suit.    There is a prayer asking that the judgment be
set aside, etc.

Defendant then proceeds by way of a cross-bill to state
the rendition of the same judgment and that in October, 1895,
a writ of *scire facias* to revive the judgment had issued out of
the United States court in the name of Owings to the use of
plaintiff against defendant; then the same facts to show that
the judgment was obtained by fraud as above stated are
pleaded again, and the cross-bill concludes with a prayer for
an injunction to restrain the plaintiff from further prosecuting
the writ until the final determination of this suit.

On motion of the plaintiff the court struck out all of de-
fendant's answer except the first clause which admitted the
rendition of the judgment and denied the assignment, to
which the defendant duly excepted.    The cause was tried by
the court without a jury.

On the trial the plaintiff introduced in evidence a docu-
ment marked "Transcript of Judgments," which purports to
set out a copy of the petition, summons and return showing
service on defendant and the judgment in question, and a cer-
tificate purporting to be signed by the clerk, to the effect that
on September 12th, 1891, there was presented an assignment
of the judgment "duly acknowledged to Charles P. Wonderly
of St. Louis, Mo., dated Nov. 28, 1885."    To the whole docu-
ment there is the attestation of the clerk duly certified by the
judge, that it is a "true copy of the judgment record in the
above entitled cause."    Defendant objected on the ground
that the certificate of the clerk was not sufficient.    The objec-
tion was overruled and defendant excepted.    Then plaintiff
offered what purported to be an assignment of the judgment
dated 28th November, 1885, signed by Francis P. Owings,
acknowledged before one Wm. H. Bradley as clerk of the cir-
cuit court of the United States for the northern district of
Illinois.    The defendant objected on the ground that the judg-
ment was in the name of Francis D. Owings and the purported

assignment was in the name of Francis P. Owings, and also on the ground that the purported certificate of acknowledgment was not evidence. Objections overruled and exceptions taken. Then there was a certificate of the clerk of the court in which the judgment was rendered, to the effect that he had noted the assignment on the margin of the entry of the judgment, 12th September, 1891. This was objected to as incompetent; objection overruled, and exception taken. That was all the evidence for plaintiff. Defendant offered evidence tending to prove the facts alleged in that portion of the answer which had been stricken out, but on objection of plaintiff it was excluded and defendant excepted. The court found for plaintiff and rendered judgment in his favor for $23,928.63. Motions for new trial and in arrest followed, which were overruled, and the cause is here on defendant's appeal.

I. The answer of defendant admits the rendition of the judgment as alleged in the petition. Therefore there was no necessity for plaintiff to introduce in evidence what purported to be a transcript of the judgment, and if there was any error in admitting it it was immaterial.

. The answer, however, does deny the alleged assignment, and the burden of proving that devolved on the plaintiff. The proof offered was a paper purporting to be signed by one Francis P. Owings and attested by and acknowledged before one Wm. H. Bradley as clerk of the circuit court of the United States for the Northern District of Illinois, and a certificate of the clerk of the court in which the judgment was rendered that he had noted that assignment on the margin of the entry of the judgment. The noting of the assignment on the margin of the judgment entry was, for the purposes of this case, immaterial; the material question related to the fact of assignment. The only evidence on that point was a paper purporting to have been acknowledged before a clerk in Illinois. The acknowledgment was in the form prescribed for proof of a deed to land to be recorded, but the statute on the subject of

acknowledgment of deeds, etc., does not provide for the acknowledgment of an assignment of a judgment, and the certificate was not evidence for that purpose.    Section 6043 directing how judgments may be assigned, and the assignments entered on the  judgment record, relate only to judgments of the courts of this State.    The General Assembly has no control over the records of a Federal court, and although it might lay down as a law of evidence for use in a State court a rule for the proof of the assignment of judgments of a Federal court, in the form that is here offered, yet it has not done so.    This alleged assignment purporting to have been made in Illinois, although it relates to a record of a court of the United States, yet is in no sense a judicial proceeding within the meaning of section 4881, Revised Statutes 1889, and therefore not a subject of proof by clerk's certificate.

In plaintiff's addition to the abstract of the record it is stated that there was other proof of the assignment besides that certificate.    That does not cure the error.    The other evidence may or may not have been satisfactory to the trier of the fact. The attestation of the clerk and the certificate of acknowledgment were not legal evidence of the alleged assignment, and the defendant's objection to it should have been sustained.

II.    But the serious question in this case relates to the action of the court in striking out of defendant's answer its equitable affirmative defense.    That clause in the answer was shaped to all intents and purposes as a regular bill in equity, in the form of a direct proceeding, making an attack on the judgment upon the ground that it was obtained by fraud, specifying the acts which it is charged constitute the fraud, and praying the relief of cancellation and annullment of the judgment.    And it is evident from reading the answer that the pleader had in his mind to charge that the fraud complained of was in the procurement of the judgment as distinguished from fraud in the cause of action.    The ground of equity jurisdiction in such case is clearly marked out in recent decisions of

this court. [Hamilton v. McLean, 139 Mo. 678; Bates v. Hamilton, 144 Mo. 1.]

The very able briefs of the counsel in this case discuss the questions of law involved and review the authorities with so much learning and industry that our labors are greatly lightened.

In reading a court's decision, it is always important to understand the facts of the particular case in order to obtain a correct view of the law declared in the opinion. The observance of that precaution is particularly needed in reading the authorities encountered in the search for the law of this case, because one is constantly running across decisions treating of indirect or collateral attacks on judgments, and of judgments of courts of peculiar or limited jurisdiction, and of charges of fraud relating to the cause of action on which the judgment is founded.

There are several propositions contended for by the counsel for the plaintiff which for the purposes of this case may be conceded without discussion, viz: In a suit upon a judgment of a circuit court of the United States it is not necessary to set out in the petition facts to show that that court had jurisdiction. Nor can such a suit be defeated on a plea at law that the facts required to confer the jurisdiction did not exist. The judgment of that court is not subject to attack in that way. If the facts conferring jurisdiction do not appear on the face of the whole record, the judgment may be reversed on appeal or writ of error, but the proceedings can not be treated as *coram non judice*, as would be the case if it were a court not only of limited but also of inferior jurisdiction. The circuit courts of the United States are of limited but not inferior jurisdiction. [Des Moines Nav. Co. v. Iowa Homestead Co., 123 U. S. 552.] The judgments of such courts are entitled to equal rank and presumption of regularity as are judgments of the circuit courts of this State. [Reed v. Vaughan, 15 Mo. loc. cit. 141.]

The jurisdictional facts in a suit in a Federal court, although they may be independent of the facts constituting the cause of action, are yet facts to be pleaded, and if denied, proven, but when the judgment is rendered the presumption goes with it that the court tried all the issues that were raised, and found all the facts necessary on which to found the judgment, and that judgment does not depend for its validity upon the ability of the plaintiff therein to be always ready to verify his statements as to the jurisdictional facts.

All of these propositions summed up mean that such a judgment is not subject to a collateral attack; and no one is here contending that it is. But the judgment of a circuit court of the United States, like that of a circuit court of the State, may be attacked in a direct proceeding in equity upon the ground that it was concocted and procured by fraud; and no one is here disputing that proposition.

The attack made on the judgment in this answer is not collateral, but a direct proceeding in equity to annul the judgment; the plaintiff's motion to strike out confesses the facts and the only question therefore is, do the facts stated make out a case of a judgment concocted and procured by fraud?

Taking these statements to be true, the plaintiff was the owner of these county or township bonds; he knew that this court had in numerous cases decided that the act of the Legislature under which they were issued was in violation of the Constitution of the State, and the bonds were invalid; he knew that the United States courts had held that the act was constitutional and the bonds valid; he knew that he could not get a judgment on his bonds in any court in the State; he knew that if he could sue in the Federal court he could get a judgment, but being a citizen of Missouri he knew he had no right to sue a county of Missouri in a Federal court; then, to obtain under false pretense what he could not obtain by truth, he impersonated a citizen of Illinois and under that disguise went into the Federal court and obtained his judgment; he did not

go in with his own face or his own name, but equity which looks at the substance and not at the shadow, which regards the real and not the sham, looks through the mask and recognizes the plaintiff in this suit as the real plaintiff in that suit. The scheme was a fraud on the court whose jurisdiction was betrayed and a fraud on the defendant who was tricked out of its defense.

True, the statement in the petition in that suit that Owings a citizen of Illinois was the owner of the bonds, is a statement which, under fair conditions, might have been traversed, and the plaintiff put to his proof. But there were no such fair conditions there. The fact that that statement was false was known only to the plaintiff and Owings, and they concealed it for the purpose of preventing defendant from making that defense. Not only was the true ownership of the bonds known to them but the false appearance of ownership was a fact of their own creation, concocted for the purpose of deceiving the court into entertaining a case which if the truth appeared it would have rejected on the ground that it had no jurisdiction. [18 U. S. Statute at large, chapter 137, p. 472; Williams v. Nottawa, 104 U. S. 209; Farmington v. Pillsbury, 114 U. S. 138; Hartog v. Memory, 116 U. S. 588; Morris v. Gilmer, 128 U. S. 324.]

Cases are cited to support the contention that a sale made to a non-resident for the purpose of enabling the grantee to sue in a Federal court is not a fraud within the meaning of the Federal judiciary act; but those cases, if they bear out the contention, do not help the plaintiff in this suit, because according to the averment in the answer there was no sale of the bonds to Owings. They were the property of Wonderly while they were in suit under the false pretense that they were the property of Owings. [Barney v. Baltimore, 6 Wall. 280.]

Farmington v. Pillsbury, *supra*, was a case where municipal bonds of a village in Maine had been issued under an act of the Legislature which the Supreme Court of that State had

declared to be unconstitutional, and the bonds invalid; the holder of some of them made a collusive transfer to a citizen of Massachusetts for the purpose of suing on them in a United States court.   The Supreme Court of the United States in that case, per WHITE, Chief Justice, said (l. c. 143): "And upon the question of transfer it was uniformly held that, if the transaction was real and actually conveyed to the assignee or grantee all the title and interest of the assignor or grantor in the thing assigned or granted, it was a matter of no importance that the assignee or grantee could sue in the courts of the United States when his assignor or grantor could not. . . . But it was equally well settled that if the transfer was fictitious, the assignor or grantor continuing to be the real party in interest, and the plaintiff on record but a nominal or colorable party, his name being used only for the purpose of jurisdiction, the suit would be essentially a controversy between the assignor or grantor and the defendant, notwithstanding the formal assignment or conveyance, and that the jurisdiction of the court would be determined by their citizenship rather than that of the nominal plaintiff.   . . .   Such was the condition of the law when the act of 1875 was passed, which allowed suits to be brought by the assignees of promissory notes negotiable by the law merchant, as well as of foreign and domestic bills of exchange, if the necessary citizenship of the parties existed. This opened wide the door for frauds upon the jurisdiction of the court by collusive transfers, so as to make colorable parties and create cases cognizable by the courts of the United States. To protect the courts as well as parties against such frauds upon their jurisdiction, it was made the duty of a court, at any time when it satisfactorily appeared that a suit did not 'really and substantially involve a dispute or controversy' properly within its jurisdiction, or that the parties 'had been improperly or collusively made or joined for the purpose of creating a case cognizable under the act,' to proceed no further therein.   . . .   This, as was said in Williams v. Nottawa,

104 U. S. 209, 211, 'imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings and dismiss the suit the moment a fraud on its jurisdiction was discovered.' "

We have thus quoted at length the language of the Supreme Court of the United States to show that that court denounces the conduct of the parties in such transactions as a fraud on the courts as well as on the defendants.    The same unvarnished terms are used in the other cases above cited.

The reason of the doctrine that equity will not entertain a bill to set aside a judgment merely on the averment that the cause of action on which it is founded is tainted with fraud, is that the party had an opportunity to interpose that defense in the suit in which the judgment was rendered. . [Irvine v. Leyh, 102 Mo. 200, 1. c. 207.]    But when the defendant is prevented by the fraud of the plaintiff from making the defense, and when as in this case the defense rests in the peculiar knowledge of the plaintiff and he conceals it from defendant, the fraud attaches to the judgment itself and vitiates it; it is a fraud in procuring the judgment.    [Black on Jud., sec. 371; Freeman on Jud., sec. 491; Fish v. Lane, 3 Hayw. (N. C.) 342; Reed v. Harvey, 23 Ark. 44; Spencer v. Vigneaus, 20 Cal. 442; Ocean Ins. Co. v. Fields, 2 Story 59.]

In the case last cited the decision was by Judge STORY, wherein he says:    "Now, the very reason, upon which the present bill is founded, is, that this, a perfect and valid defense at law, was, by the fraudulent concealment of the defendant, and the total ignorance of the plaintiffs in the facts, incapable of being set up to the original action; and the recovery was, therefore, inequitable and iniquitous.    It would be against all the principles of a court of equity, to allow one party to practice a fraud upon another party, and by another act of fraudulent concealment recover a judgment against him founded upon the prior act; and then to be permitted to assert this

·double iniquity as a bar to all equitable relief against the judgment."

Even if the suit in which the judgment now in question was rendered had been in a state court, it would have been necessary for the nominal plaintiff Owings to have averred in his petition that he was the owner of the bonds, because that was a fact essential to his cause of action; but that averment in that case in the Federal court had a double significance, the one bearing on the plaintiff's right of action, the other on the right of the owner of the bonds to sue in that court; in the one sense it was a fraud on the defendant alone, in the other it was a fraud on both the court and the defendant.   The law which required the owner of the bonds to be a citizen of another State in order to give the Federal court jurisdiction was a law of that court, and the plaintiff's act of masking as Owings and thus gaining entrance which with his own face he could not have gained, was a fraud in law.   And since by that means he evaded the law of this State applicable to his cause of action, as pronounced by this court, his judgment is to be deemed as in fraud of the law of this State, and not entitled to the protection of its court.     [Freeman on Judgments, sec. 566; Dunlap & Co. v. Cody, 31 Ia. 260; Duringer v. Moschino, 93 Ind. 495.]

In the Iowa case just above cited the plaintiff's cause or action was barred by the statute of limitations in Iowa where the defendant resided, and the plaintiff to evade that defense, by a fraudulent scheme induced defendant to go to Illinois, where the claim was not barred and there served process on him and obtained judgment.   In a suit on the judgment in Iowa the Supreme Court of that State by DAY, C. J., said: "Counsel representing plaintiff in this court, and who, it is but just to say, were not concerned in obtaining the judgment in Illinois, do not seriously controvert the position that the mode of obtaining jurisdiction was fraudulent.   They concede that it 'smells somewhat of fraud.'   The only palliation which they are able to offer is the suggestion of a doubt whether it may

not be considered a pious fraud in which the end justifies the means. We do not think that it is entitled even to that small measure of charity. An enlightened and just administration of the law, no less than some public morals, condemns such practices, and demands that the client whose cupidity could sanction, and the attorney whose venality could execute, such a purpose, should alike be disgraced."

We quote the words of these high courts and distinguished jurists to show in what estimation they hold the conduct of those who by cunning would pervert the administration of justice.

There is no difference in principle between the fraudulent concoction of a scheme that brings the defendant within the jurisdiction of a court of a foreign state, and the fraudulent concoction of a scheme that brings him within the jurisdiction of a Federal court which otherwise would not have had jurisdiction over him.

In whatever aspect we view it we can not fail to see that the judgment in question was obtained by a fraudulent abuse of the court which rendered it, and a fraudulent scheme by which the defendant was tricked out of the defense it had a right to make, and could have made in the only forum in which the real plaintiff could have sued.

The point is advanced in plaintiff's brief that a judgment can be annulled on the ground that it was obtained by fraud only in the court in which it was rendered. But there is no foundation in reason or authority for that proposition, and the contrary has been declared in Marx v. Fore, 51 Mo. 69; Payne v. O'Shea, 84 Mo. 129; Doughty v. Doughty, 27 N. J. Eq. 315; Pomeroy Eq. Jur. (2 Ed.), sec. 919.

A suit to set aside a judgment is a suit in equity and it was necessarily in another court than that in which the judgment was rendered when courts of law and courts of chancery were separate, and when the judgment attacked was a law judgment. In the case at bar if the defendant could have no

relief in a state court, it could have none at all.   If the suit
at bar had been brought in the United States circuit court
the defendant could not have pleaded the equitable defense
it has pleaded here, because under the practice in that court
only legal defenses can be pleaded to legal actions.   The de-
fendant would have been compelled to have filed a separate suit
in equity under that practice to obtain the relief it seeks.
But being a citizen of this State it could not have maintained
such a suit there because the doors of that court are not open
to this defendant.   Hence if the plaintiff's contention is cor-
rect, a citizen of Missouri against whom a judgment should be
obtained by fraud in a United States court would be absolutely
without remedy.

A suit in equity to set aside a judgment in no sense assails
the court in which the judgment was rendered; it is simply a
proceeding *in personam,* and the decree adjudges the rights
of the parties *inter sese* in relation to that judgment.   [Story
Eq., sec. 875; Black on Judgments, sec. 919; Pearce v. Olney,
20 Conn. 544; Marshall v. Holmes, 141 U. S. 589.]

A judgment of a United States circuit court sitting in
this State is to be accorded such effect, and such effect only,
as a judgment of a circuit court of this State.   [Black on
Judgments, sec. 938; Crescent Live Stock Co. v. Butcher's
Union Co., 120 U. S. 161.]

The Federal circuit courts have never claimed for them-
selves higher authority than the highest courts of original
jurisdiction of the State in which they sit, and the lofty spirit
in which those courts administer justice, repels the idea that
they would claim that a judgment of theirs procured by fraud
and abuse of their jurisdiction, should be held exempt from
a direct attack in the only forum in which the injured party
could obtain relief.

There are decisions to the effect that a state court will
not interfere with the due course of a writ issuing out of a
Federal court or a trial there, and in like manner, and for the

same reason, a Federal court would not interfere with the process of a State court or with a trial there. But the principle on which these decisions are founded has nothing to do with a proceeding in equity to set aside a judgment on the ground that it was obtained by fraud. In such case a Federal court of equity will entertain a bill to set aside a judgment obtained in a State court, and a State court of equity will entertain a bill to set aside a judgment obtained in a Federal court. The distinction here made is pointed out by the Supreme Court of the United States in Marshall v. Holmes, *supra.*

The circuit courts of this State are courts of general jurisdiction, and there is no subject of litigation between citizens of this State, beyond their jurisdiction, except such subjects as are by our law conferred on other courts of limited jurisdiction.

When a suit on a judgment is brought in a circuit court in this State, the defendant may, under our Code of Civil Procedure, plead as an equitable defense facts showing that the judgment was procured by fraud. [Marx v. Fore, 51 Mo. 69; Ward v. Quinlivin, 57 Mo. 425.]

Plaintiff in his brief insists that the defendant has not shown due diligence in discovering the fraud. The answer avers that the fraud was known only to plaintiff and Owings, and by them concealed so that defendant did not discover it until after the institution of this suit. There could be no laches on the part of defendant under those circumstances.

The facts pleaded in that portion of the answer now under discussion constitute a complete equitable defense to the suit, and if sustained on the trial the defendant will be entitled to a decree annulling the judgment on the ground that it was procured by fraud, and perpetually enjoining the plaintiff from proceeding or attempting in any manner to enforce it or make any use of it whatever. The circuit court erred in striking out that part of the answer.

III. There was another paragraph of defendant's answer also stricken out which contained a statement of the same facts

and the additional fact that the plaintiff had sued out of the United States court a *scire facias* to revive the judgment, and prayed an injunction to restrain the plaintiff from prosecuting that writ.

It will not be necessary for us now to decide whether or not the action of the court in striking out that paragraph was right, because its sole object was to obtain an injunction against the prosecution of the *scire facias* which injunction was denied, and that writ has doubtless taken its course and its force is spent.

The suing out of that writ serves to illustrate what has been said above on the point of the jurisdiction of the State circuit court to adjust the rights of the parties according to the equities pleaded in the answer. The defendant in that writ whatever its equities, was entirely defenseless. That court could hear nothing in answer to that writ except that the judgment had been paid; no equitable defense could be pleaded, and the defendant being a citizen of Missouri could bring no independent suit in equity in that tribunal. It would be a very imperfect system of jurisprudence if the courts of the State which alone have jurisdiction of both parties were powerless to enforce justice between them.

The judgment of the circuit court is reversed and the cause remanded to be retried according to the law as herein expressed. All concur