## J. P. BRACKEN, Appellant, v. JAMES R. MILNER et al., Respondents.

### St. Louis Court of Appeals, March 3, 1903.

1. **Fraud:** FRAUDULENT CONVEYANCE: FRAUD AGAINST SUBSEQUENT CREDITORS. Where one has fraudulently contracted debts, which he can not pay and then makes a voluntary conveyance of his property and thereafter contracts other debts, which he can not pay, the inference is that he intended by his voluntary conveyance to hinder and delay his subsequent as well as his existing creditors.

2. **Fraudulent Conveyance:** CONVEYANCE TO WIFE BY SHERIFF'S DEED. The relation of wife does not preclude or disqualify her to buy the husband's lands, or his interest in lands at a sheriff's sale, if she does so with her own money and without collusion with her husband to protect him from his creditors.

3. **Courts:** JURISDICTION OF: MINUTES OF CLERK AND JUDGE: RECORD CAN NOT BE ATTACKED COLLATERALLY. The minutes kept by the judge and the clerk of a court of record may at a term subsequent to the trial at which the judgment was rendered, be used for the purpose of correcting an error of the clerk in entering the judgment as for the purpose of entering a correct judgment when the wrong one had been recorded, or for the purpose of entering a judgment nunc pro tunc, where the clerk omitted to enter any judgment at all upon the records, but can never be used in a collateral proceeding to show error or mistake in the judgment itself, or to contradict the date or the term of the court at which the judgment purports to have been rendered.

4. **Federal Courts:** JUDGMENTS OF FEDERAL COURTS. The judgment of the Federal courts are entitled to equal rank and presumption of regularity, as judgments of the circuit courts of this State.

Appeal from Greene Circuit Court.—*Hon. James J. Neville*, Judge.

AFFIRMED.

### STATEMENT.

H. C. Milner is the wife of James R. Milner. In 1884, James R. Milner, in consideration of love and affection conveyed to his wife, lot No. 94 and south twenty-four feet of lot No. 98, Harwood, Lisenby & Boyd's addition, in the city of Springfield, Missouri.

In 1894, A. W. Howell obtained a judgment against James R. Milner for $461 in the Greene Circuit Court. An execution was issued upon this judgment and levied upon the above described real estate as the property of James Milner. After the levy the property was advertised for sale under the execution. Before the day of sale Mrs. Milner bought the judgment with her own funds and had it assigned to her. On the advice of her attorney, she permitted the property to be sold on the execution and at the sale bid it in and received a sheriff's deed therefor, which deed, together with the one made to her by her husband in 1894, she caused to be placed of record.

The property was incumbered by a mortgage to secure a note of $1,500. It appears that Judge Rassieur of St. Louis furnished Milner with money to take this mortgage up and that it was taken up by James R. Milner, but was not satisfied of record; that afterwards James R. Milner used it as a collateral security to obtain a loan from the Holland Bank at Springfield, and that it was in pledge to said bank on the day of trial to secure money borrowed by James R. Milner.

It appears that Judge Rassieur had had some deal-

ings with Milner concerning some mining property at
Aurora, Missouri, out of which he had made consider-
able money and that he had let Milner have money as
a gratuity to help him out of his financial troubles.

James Milner made his wife a gift of nineteen
shares of the stock of the Sphalerite Mining Company
(a corporation) of the par value of $1,900.

On October 5, 1900, plaintiff recovered in the
United States Circuit Court for the Southern Division
of the Western District of Missouri, a judgment against
James R. Milner for $1,800, which is in full force and
effect. An execution was issued on this judgment and
returned by the marshal of the district *nulla bona.*
After this return was made, plaintiff brought this suit
in the Greene Circuit Court against Milner and wife,
to subject the above described real estate and shares
of stock to the payment of the judgment. After hearing
the evidence the court entered a decree subjecting the
nineteen shares of mining stock to the payment of
plaintiff's judgment and found the $1,500 note and
mortgage to be the property of James R. Milner and
subjected it also to the payment of plaintiff's debt, sub-
ject, however, to the rights of the then holders of the
same, and found the other issues in favor of Mrs. Mil-
ner. After taking the usual steps to preserve their
exceptions both parties appealed.

*White & McCammon* for plaintiff.

(1) If the court has jurisdiction of the subject-
matter and the person (there is no contention here that
the court did not have jurisdiction of both), the judg-
ment is not subject to collateral attack. Rosenheim v.
Hartsook, 90 Mo. 365; Karnes v. Alexander, 92 Mo.
671; Gray v. Bowles, 74 Mo. 423; State ex rel. v. Done-
gan, 12 Mo. App. 201; State ex rel. v. Donegan, 83 Mo.
375. (2) "The text of the record is the evidence which
must control as to the time when the judgment is en-

tered; and it can not not be corrected on the trial by the judge's date of signing in the margin.'' Vail v. Smith, 4 Cow. 71; People v. Gray, 25 Wend. 465; Pollys v. Imp. Co., 113 U. S. 81; Kosterbader v. Kuebler, 48 Atl. 972; Erwin v. Lowry, 8 How. 180; White v. Crow, 110 U. S. 183. (3) The verity of the record is presumed, and in a proceeding to correct it by an entry *nunc pro tunc*, such presumption will control where the evidence afforded by the minute book and judge's docket are in conflict. The date of the file marks on an opinion by the court does not rebut presumption of correctness of different date of entry of judgment as shown by the record. Record can not be impeached to show judgment rendered a day later than it purports to have been. Railway v. Holschlag, 144 Mo. 253; Ferguson v. Kuemler, 25 N. W. 183; Kosterbader v. Keubler, 48 Atl. 972. (4) Excessive efforts to give a transaction the appearance of fairness, and studied formality and apparent fairness in transactions, such as this, are rather the badges of fraud than the indication of honest intentions. Wait's Fraud. Convey., sec. 241. (5) It has been held in similar cases that a mere nominal sum is not a valuable consideration. Lionberger v. Baker, 88 Mo. 447; Kuykendall v. McDonald, 15 Mo. 416; Fisher v. Lewis, 69 Mo. 629. (6) We submit that under all the circumstances attending this sale, $219.25 is a nominal sum and no real consideration for all the property conveyed, and the wife should not be permitted, by such a contrivance and for such a price, to withdraw beyond the reach of creditors all the property of her husband. (7) It is not necessary to show actual fraud on the part of Mrs. Milner. The voluntary conveyance or payment by Milner of the mortgage debt on her property while so indebted is evidence of an intent on his part to hinder and delay his creditors and makes such transfer void. Bump, Fraud. Convey., secs., 247, 248 and 249; Patten v. Casey, 57 Mo. 118.

*Heffernan & Heffernan* for defendants.

(1) The judgments having been rendered by the judge in vacation, and not in court, are void and of no effect. State ex rel. v. Woodson, 161 Mo. 444; Riser v. Hoyt, 53 Mich. 185; Wilson v. Rodewald, 61 Miss. 228. (2) A judgment is the final consideration and determination of a court of competent jurisdiction. Orvis v. Elliott, 65 Mo. App. 101; Ross v. Ross, 83 Mo. 102; State v. Wear, 145 Mo. 164; State ex rel. v. Earnest, 150 Mo. 343.

BLAND, P. J.—1. The evidence is that James R. Milner, as early as 1880, was a real estate and loan agent and as such had fraudulently converted money and property of his clients to his own use and in this manner became indebted to them and continued to be indebted to divers persons and was, in 1881, insolvent and has continued insolvent down to this time, so that there is no question that the voluntary conveyance of real estate to his wife in 1884 was fraudulent in law as to his existing creditors and, we think, that it was also fraudulent as to his subsequent creditors for the reason that where one has fraudulently contracted debts which he can not pay, and then makes a voluntary conveyance of his property and thereafter contracts other debts which he can not pay, the reasonable inference is, that he intended by his voluntary conveyance to hinder and delay his subsequent as well as his existing creditors.

2. The title acquired by Mrs. Milner at the sheriff's sale and by virtue of the sheriff's deed presents quite another proposition.

In answer to a question as to where she got the money to buy the judgment, she said:

"I can tell you exactly. For two successive years before this I had business, city and out of town a great deal, an unusual amount of original painting, and I

was so fortunate as during those two years to make several larger sales than I have ever done since. One sale was a seven-hundred-dollar one. It was not all paid to me in money, but was partially. There was another one of $150 just in the winter preceding this. That was a screen for Mrs. O'Day.''

She further testified that before she married Milner she had been a teacher in Drury College at a salary of $1,500 per annum, and previous to that had·been a teacher in the Kirksville Normal School for three years at the same salary and had laid by some of the money.

The cashier of the bank where she kept an account testified that on the day she purchased the judgment she had to her credit in the bank $510.35, and that on the succeeding day her account was overdrawn by fifteen cents.

Her attorney testified that the judgment was purchased with her own money; that James R. Milner did not furnish a penny of it and had nothing whatever to do with the transaction.

Had this purchase by Mrs. Milner, under these circumstances, been on an execution issued against some person other than her husband, and of land not owned by him, it would not be pretended that her husband acquired any legal or equitable interest in the land purchased. The relation she bore to Milner did not preclude, or disqualify her to buy his lands, or his interest in lands at a sheriff's sale, and if she did so with her own money and without collusion with her husband to buy it to protect him from his creditors, the sale is as valid and vested in her as good a title as if the purchase had been of lands belonging to a stranger, and we think Mrs. Milner, under the evidence, acquired by her purchase at the sheriff's sale a good title against both Milner and his creditors.

3. It is admitted by defendants that the nineteen shares of mining stock should be subjected to the plaintiff's debt.

4. In respect to the $1,500 note and mortgage, the evidence is reasonably satisfactory that James R. Milner took it up with money furnished him by Judge Rassieur; that he afterwards used this mortgage as collateral security for money borrowed by him for his own purposes. In such circumstances, he has an equity in the mortgaged property which is available in payment of the debts to his creditors, subject, however, to the prior lien of the Holland Bank to which Milner pledged the mortgage as security for money loaned.

5. On the trial, counsel for defendants for the purpose of impeaching the judgment plaintiff recovered against James R. Milner in the United States Circuit Court, offered and read in evidence the judge's minutes, the evidence of the clerk of the United States Circuit Court, and correspondence between counsel for defendants and the judge, who rendered the judgment, which evidence counsel claims tends to show that the judgment was not rendered during a term of the United States Circuit Court, but that the cause was taken under advisement by the judge on the day the court adjourned for the term, and the judgment was afterwards rendered in vacation without the knowledge or consent of defendant Milner or his counsel. This evidence was excluded by the court and this ruling is assigned as error by the defendants.

A judgment may be collaterally attacked for one cause only, to-wit, for the purpose of showing that the court that rendered judgment had no jurisdiction of the subject-matter of the suit or had not acquired jurisdiction of the person of the defendant, and the want of jurisdiction must ordinarily be made to appear from the records and proceedings in the cause. The minutes kept by the judge and the clerk may, at a term subsequent to the trial at which the judgment was rendered be used for the purpose of correcting an error of the

clerk in entering the judgment or for the purpose of entering a correct judgment when the wrong one had been recorded, or for the purpose of entering a judgment *nunc pro tunc* where the clerk omitted to enter any judgment at all upon the records, but can never be used in a collateral proceeding to show error or mistake in the judgment itself, or to contradict the date or the term of the court at which the judgment purports to have been rendered. The judgment is the conclusion of the whole matter, and all the proceedings anterior to it are concluded by it, and the text of the judgment is the evidence which must control as to everything written into it. Polleys v. Blank River Co., 113 U. S. 1. c. 84; Kostenbader v. Kuebler, 48 Atl. (Pa.) 972; Lovitt v. Russell, 138 Mo. 474; State v. Wear, 145 Mo. 162.

The judgments of the Federal courts are entitled to equal rank and presumption of regularity as judgments of the circuit courts of this State. Wonderly v. Lafayette Co., 150 Mo. 635.

In State v. Wear, supra, it was held: "Where a judgment recites a state of facts not shown by the previous records of the case, such judgment can not be inquired into in a collateral proceeding, unless such facts were jurisdictional."

In Railway Company v. Warden, 73 Mo. App. 117, it was held that a court of equity has no authority to overhaul the records of any other court for any error of law or fact committed by that court, and that any attempt to do so is necessarily collateral.

We think the court did not err in excluding the offered testimony collaterally attacking the judgment of the Federal court. The judgment rendered by the circuit court, we think, is supported by the great weight of the evidence and is affirmed. *Reyburn, J.,* concurs; *Goode, J.,* not sitting.