# CHARLESTON.

### PRESTON v. HUFFORD *et al.*

Submitted January 15, 1918. Decided January 22, 1918

1. EXECUTION—*Exemptions—Extention List—Wrongful Execution—Liability on Bond.*

   Where an attachment issued by a justice in an action pending before him is levied on property contained in a car for transportation by a carrier to a destination within the state is quashed, and the property released from the levy, but part of the same property is levied upon under an execution issued by the justice the next day upon a judgment rendered in the same action, an exemption list prepared and delivered by the debtor as required by §24, ch. 41, Code, to prevent a sale of the property under the attachment or other process, will in such circumstances apply alike to both writs; and a sale made in disregard of the exemption claim will, under section 25 of the same chapter, subject the officer to an action on his official bond for double the value of the property so wrongfully sold. (p. 512).

2. EXEMPTIONS—*Exemption Schedule—Conclusiveness.*

   Unless attacked as fraudulent, or an appraisement of the property listed is demanded under §24, ch. 41, Code, a schedule prepared and filed as required by that section is conclusive both as to the property and its valuation. (p. 513).

3. EXECUTION—*Purchase by Debtor's Wife—Validity.*

   The mere existence of the marital relation does not prevent or disqualify the wife from buying the property of the husband at a sale under an execution, if she does so with her own funds and without collusion with him to hinder, delay or defraud his creditors. (p. 514).

81 W. Va.

Error to Circuit Court, McDowell County.

Action by Harold Preston against A. C. Hufford and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Lilz & Harman,* for plaintiffs in error.

*Anderson, Strother, Hughes & Curd,* for defendant in error.

LYNCH, JUDGE:

Two actions were brought March 6, 1916, before A. C. Hufford, a justice of the peace of McDowell county, against Harold Preston and his wife jointly, one by C. D. Brewster & Co., the other by Home Office Supply Co., on accounts contracted by Preston, in each of which actions attachments were issued and placed in the hands of E. W. Cullen, deputized special constable, as permitted by §30, ch. 50, Code, who levied them on certain goods contained within a box car for transportation from Welch to Huntington by the Norfolk & Western Railway Company, and that company was named in each proceeding and summoned to answer as garnishee. Each attachment was based upon an affidavit charging defendants with an attempt to remove the property into another state, with intent to defraud creditors. On the return day of the summons, the justice, upon an issue joined on defendants' pleas in abatement denying the existence of the grounds stated in the affidavits, entered an order directing the release of the property from the lien of the levy, dismissed the actions as to Mrs. Preston, and entered judgments against her co-defendant for the amounts claimed by each plaintiff, and on the next day issued executions thereon, which he also placed in the hands of Cullen, who levied them upon part only of the goods attached after the release from the former levy, and sold them, despite the exemption claim of Preston prepared and tendered in conformity with §24, ch. 41, Code; and this action against Hufford and the sureties upon his official bond ensued and resulted in the judgment brought here for review.

Though defendants assign as erroneous the ruling sustaining the sufficiency of the declaration, upon challenge by demurrer, they do not in argument point to any defect in form or substance, and a cursory inspection fails to discover any vice or imperfection in the pleading. The grounds argued and relied on for reversal are (1) admission of improper evidence against defendants; (2) the rejection of proper evidence offered in their behalf; and (3) the refusal of instructions 2, 3 and 4 propounded by them.

It is difficult to perceive in what respect the testimony of the admission of which they complain, though strictly speaking perhaps inadmissible, caused them any serious injury or detriment; because their own witnesses and the documentary proof corroborate what Strother, of counsel and also a witness for plaintiff, said he understood from the parties at the time of the trial of the actions before Hufford, namely, that the property levied on and sold under the executions was a part of the same property levied on under the attachments and later released from the liens created by these levies. Of the identity of the property actually sold as a part of the property attached there can be no doubt. Cullen so testifies; and from Hufford's testimony as a whole the same inference is permissible.

Though it purports to involve only the rejection of some oral and documentary proof offered by defendants, the second assignment, as argued, comprehends more than the question of the mere competency of the proof. It reaches the only controverted vital and important issues in the case. Immediately upon the seizure and detention of the property attached, Preston prepared and attempted to file with the justice and constable what purports to be a list of all his personal property of every character, stating items and values, aggregating less than two hundred dollars, and that he was entitled to have the property released and discharged as exempt from the lien of executions and other process, at the time of the levy of the attachments upon it, and from which levy it was released by Cullen, acting upon order of the justice. But defendants seek to exonerate themselves from liability in this action by gravely pretending to insist that the

exemption lists can not avail plaintiff as against executions subsequently issued and levied, because not re-filed and also because he did not list all the property owned by him at the date of the process.  To be more specific, the theory of their defense seems to be that, conceding the efficacy of the exemption to prevent enforcement of the attachments against all the property levied on, it did not so operate against the executions issued and levied the day after the property was released from the lien of the attachments.  Evidently, both Hufford and Cullen were aware of the purpose for which the lists were filed, that purpose clearly being to save the property from sale either under the attachments or other process. The lists were delivered to them when both were present. Each of them inspected the papers, and Hufford, with the knowledge of Cullen, placed one of them in the file containing the papers of each action.  It will not do to approve a defense of the character relied on.  To do so would set at naught the avowed intention of the statute, defeat its benevolent purpose, and impose hardship not within legislative contemplation.  If that course were sanctioned, a debtor, to protect himself, must be constantly alert and prepared without intermission to meet and frustrate such practice.  It is not difficult to perceive that the issuance of the executions may have been withheld until the day after the release of the property from the attachments, to produce this result, although both writs pertain to the same liability between the same litigants. The excessive and unwarranted effort to give the transaction the colorable appearance of legality indicate a purpose to thwart the statute rather than give it the effect intended by its enactment.

Were it formally charged and satisfactorily proved that plaintiff fraudulently withheld from the inventory a material or valuable part of the property he owned, for the purpose of shielding it from levy, there might perhaps be merit in the inference sought to be created by the statement of Cullen, as a witness for defendants, to the effect that in his judgment the value of the goods levied on under the attachments exceeded the value fixed by the inventory.  But shall his estimate, made perfunctorily upon a mere casual examination,

.be permitted to overcome and set at naught an exemption ·claim conforming in every particular with the provisions of a statute the object of which is to protect a debtor and his .family from the forced sale of his property when its value is less than two hundred dollars? There is no pretense that the value by items of the property levied on and sold is not wholly or approximately correct. Defendants do not challenge it as unfair or excessive; nor is there anything but the :statement of Cullen implying concealment of any item of property. Everything in the nature of personalty owned by Preston, the existence of which is intimated, was included in the goods levied upon under the attachments; and all of it was in the view of the officer when he levied the executions ·on part of it.

Certainly, as defendants argue, a debtor who claims property exempt from seizure for his debts must bring himself and the property within the terms of the statute applicable. But, as we have seen, defendants have failed to show wherein Preston did not comply with our exemption law. He did all that it requires. The lists made, verified and filed by him conform in every particular with legal requirements. The verification shows he included therein every species of property owned by him, by items; and no proof except that referred to tends to show that he had or possessed property not listed by him. The statute specifies what he shall do, and that he did, to save his property from sale under the writs.

What has been said sufficiently shows the impropriety and inapplicability of the instructions by the·rejection of which defendants contend they were prejudiced. There was admitted no proof which justified the giving of the instructions.

By the final assignment, defendants insist that the purchase of the property sold under the executions, by counsel who rpresented the Prestons in the actions which gave rise to this proceeding, for and on behalf of Mrs. Preston, operated merely to effect its redemption from the lien of the process. As to this proposition it may be observed, in passing, that, ·as Mrs. Preston had ceased to be a party to the first actions, before the sale was made, and was not called thereafter by any process or pleading there or elsewhere to defend the title

acquired by her repurchase from counsel, that title can not be attacked in this manner. She has had no opportunity to be heard in its defense, and for aught that appears may not be cognizant of an effort to impeach its validity. So that we are asked to·construe the sale as a mode of redemption, without pleading or proof and an opportunity to be heard, and without more than the mere suggestion of an intention of the wife to redeem the property of her husband from sale, at which the purchase was made by counsel. But they paid for the property, and held the title until such time as she could and did arrange to redeem from them. If she did so with her own money, or money derived from a source other than her husband, and without his connivance to defraud creditors, the transaction was not fraudulent or invalid. *Bracken* v. *Milner*, 99 Mo. App. 187, where the court said what is true in this case: "The relation of wife does not preclude or disqualify her to buy the husband's lands or his interest in lands at a sheriff's sale, if she does so with her own money and without collusion with her husband to protect him from his creditors."

While no question has arisen as to the right to maintain the action upon the official bond of the justice who rendered the judgments and issued the writs of attachment and execution in the two proceedings before him, instead of against Cullen, who levied the writs and sold the property, it seems advisable, in order to avoid misapprehension, to·say that the action was brought properly; because, as Cullen, who was not a constable elected or appointed, but was deputized by the justice to act as a special constable, the justice and his sureties became liable "for any neglect of duty, default or misconduct" of Cullen "in the matter for which he was deputed." Ch. 50, §31, Code. It is proper also to observe that, although the order entered June 16th notes the filing of a special plea tendered by defendants, no such plea appears in the record. What issue it was intended to raise we have no means of ascertaining, and discover no proof tendered and admitted not admissible under the general issue.

For the reasons stated, we affirm the judgment of the circuit court.                              *Affirmed.*